CITY OF KNOXVILLE *et al. v.* STATE *ex rel.* HAYWARD.

(*Knoxville*, September Term, 1939.)

Opinion filed November 25, 1939.

HARTMAN, LOCKWOOD & CARSON and GRIMM & TAPP, all of Knoxville, for plaintiffs in error.

CHARLES E. RADER, WILLISTON M. COX, and S. E. HODGES, all of Knoxville, for defendant in error.

MR. JUSTICE DEHAVEN delivered the opinion of the Court.

This is a *mandamus* suit. The relator, Claudia Brooks Hayward, filed her petition herein seeking to compel the defendants, City of Knoxville and the Board of Education of Knoxville, to restore her as teacher in the public schools of the city, from which position she avers she was illegally discharged.

The trial judge found as a fact that relator was elected teacher by the Board of Education of Knoxville for three consecutive years, the last of said elections being in April, 1937, for the school year 1937-8. The trial judge further found that relator was dismissed by the Board of Education solely on account of her marriage on December 26, 1937; that such dismissal was without right or authority under Chapter 800, Private Acts 1937, and was null and void.

From the final decree ordering defendants to restore relator to her office as teacher, defendants have appealed to this court and assigned errors.

■ The trial judge having rendered his judgment, defendants made no motion for a new trial. Such motion is necessary to authorize a review of the facts on appeal in error from a common law court. *Board of Equalization* v. *Railroad*, 148 Tenn., 676, 257 S. W., 91; *Railroad Co.* v. *Johnson*, 114 Tenn., 632, 640, 88 S. W., 169; *Rogers* v. *Colville*, 145 Tenn., 650, 238 S. W., 80; *Nashville, C. & St. L. R. R.* v. *Smith*, 147 Tenn., 453, 455, 249 S. W., 377; Supreme Court Rule 14 (5). Having made no motion for a new trial errors apparent upon the record proper are alone open to review. *Board of Equalization* v. *Railroad, supra.* The assignments of error made here challenging the facts as found by the trial judge must, under the above rule, be overruled.

■■ Under certain of the assignments of error it is contended that Chapter 800, Private Acts 1937, violates both Article 1, section 8, and Article 11, section 8, of the Constitution of Tennessee, in that it seeks to grant the teacher and others referred to therein preferences, privileges and immunities afforded them in their private relations, other than those conferred by the general laws

of the State, and attempts to impose limitations, re-strictions, duties, responsibilities and burdens on the City of Knoxville and its Board of Education other and different from those imposed by the general laws of the State.

Chapter 800, Private Acts 1937, referred to as civil service or permanent tenure bill, became a law on May 21, 1937. The caption of the Act in question is as follows:

"An Act to amend an Act entitled, 'An Act to in-corporate the City of Knoxville, in Knox County, Ten-nessee, and to define the rights, powers and liabilities of the same: To fix the boundaries of said municipality, and to repeal all Acts and parts of Acts in conflict with this Act,' being Chapter 412 of the Private Acts of the General Assembly of the State of Tennessee, for the year 1923, and all Acts amendatory thereof, so as to provide that civil service or permanent tenure shall apply to cer-tain employees of the Board of Education, defining their qualifications, providing for the filing of charges for the infraction of certain rules and regulations, hearings up-on such charges, the enforcement of the attendance of witnesses on such hearings, and for appeals to the Board of Education, and to repeal all laws and parts of laws in conflict with this Act."

Section 1 of the Act provides Chapter 412, Private Acts 1925, being the Charter of the City of Knoxville, ". . . be, and the same is hereby amended, so as to provide that civil service or permanent tenure shall ap-ply to all employees of the Board of Education occupy-ing the positions of principals, teachers, supervisors, clerks, secretaries, stenographers, and chief maintenance men; provided, that no persons occupying the positions of principals, teachers, or supervisors shall be deemed

to be under civil service or permanent tenure unless they hold a certificate from the Department of Education of the State of Tennessee, and have been employed by the Board of Education of the City of Knoxville for the third year from the time of their appointment or employment; and, provided, further, that no persons occupying the positions of clerks, secretaries, stenographers or chief maintenance men shall be deemed to be under civil service until after they have occupied such positions for a period of two years from the time of the appointment or employment.''

Section 2 of the Act is as follows:

''Be it further enacted, That neither the Board of Education, nor any member thereof, nor the Superintendent of Schools, nor any other official of the Department of Education shall have any right to dismiss, discharge, demote or change any employee made subject to civil service or permanent tenure by the provisions of this Act, from one position or class to another position or class within the Department of Education or otherwise at a reduced salary, unless and until charges as specified hereinafter shall have first been filed and sustained against such employee in the manner hereinafter provided; provided, however, that if in making up the school budgets the Board of Education ascertain that there is a surplusage of employees in the system, by reason of a natural diminution of the number of pupils in any school, or otherwise, the Board of Education may reduce the number of employees in the system, to the number required by first dismissing any or all of those who have not been appointed or employed for the third year, if the reduction so made is inadequate or insufficient in the opinion of the board, the board may then dismiss civil service employees without charges being

filed or sustained but said dismissals shall be made according to seniority of service.''

Section 3 of the Act provides as follows:

"Be it further enacted, That employees under civil service by the provisions of this Act may be suspended, discharged, demoted or otherwise punished, upon conviction of any crime or for inefficiency, incompetency, neglect of duty, use of narcotics or intoxicating liquors, immorality, conduct unbecoming to their profession, failure or refusal to pay his or her taxes, or failure or refusal to pay his or her honest debts, in the following manner.''

This section then goes on to provide under four lettered paragraphs the method of filing charges against such employees, notice to the accused employee, the hearing before the Superintendent of Schools, the right of the employee to appeal to the Board of Education.

By Chapter 115, Public Acts 1925, there was created a uniform system of education in this State. This Act is carried into the Code under sections 2306, et seq. We find nothing in the 1925 Act which conflicts with the provisions of the Act here under investigation, which is an amendment to the charter of the City of Knoxville, and deals with the City's schools. Defendants rely on the case of *State ex rel. Bales* v. *Hamilton County,* 170 Tenn., 371, 95 S. W. (2d), 618, 619. The court had under consideration in that case two special Acts of the legislature passed according to population classification, applicable to Hamilton County alone. The Acts fixed a minimum pay or salary for school teachers of Hamilton County. The demurrer to the bill made the point that the two Acts created an arbitrary discrimination against Hamilton County and imposed a burden on it not common to other counties in violation of section 8, Article

1, and section 8, Article 11, of the State Constitution. This contention was upheld. The court said, *inter alia,* "The act before us requires Hamilton county to pay its teachers a minimum wage, regardless of the condition of the county's treasury. It deprives the county of the right to contract according to its ability, imposing a burden on Hamilton county placed on no other county in the state—all in conflict with the general school law— and the act must accordingly fall." No such situation exists in the instant case. Here, by amendment to the charter of the City of Knoxville, a civil service is provided for the teachers in its public schools. Education being a governmental function, the legislature could directly and without the intervention of the City employ its entire force of teachers on such terms as the Legislature saw fit. This was expressly held to be true as to firemen. *Smiddy* v. *City of Memphis,* 140 Tenn., 97, 203 S. W., 512. In *City of Nashville* v. *Martin,* 156 Tenn., 443, 3 S. W. (2d), 164, 166, the court said:

"In *Scopes* v. *State,* 154 Tenn., 105, 289 S. W., 363 [53 A. L. R., 821], it was shown that the Legislature might freely prescribe the terms and conditions upon which employees of the state or of municipalities of the state should work, unhampered by section 8 of Article 1 of the Tennessee Constitution and the Fourteenth Amendment to the Federal Constitution."

And in *City of Nashville* v. *Martin,* the court further said:

"As to the police officers of the City of Nashville, the Legislature might have enacted that they should have a fixed term, or that they should serve subject to the pleasure of the mayor or of the civil service and pension board. It was equally permissible for the Legislature to declare that such police officer should serve subject to

a trial by the civil service and pension board upon the conditions set out in the act."

In *State ex rel. Bales* v. *Hamilton County, supra,* the court distinguished the cases of *State ex rel. Bise* v. *Knox County,* 154 Tenn., 483, 290 S. W., 405, 50 A. L. R., 1158, and *Smiddy* v. *City of Memphis, supra,* and said, "The statute considered in the case first named provided a pension for Knox county teachers. The statute considered in the case last named provided increased pay for members of the Memphis Fire Department. It is sufficient to say of these cases that neither of the special acts therein dealt with ran counter to any general law of the state."

Since the case of *State* v. *Wilson,* 80 Tenn. (12 Lea), 246, it has been the settled law of the State that special legislation affecting municipal corporations in their governmental or political capacities are not within the inhibition of section 8, Article 11, of the Constitution of the State.

■ Civil service laws tend to promote the efficiency of governmental employees and, we think, should be regarded with favor. The Legislature has by special acts provided civil service laws for policemen and firemen in a number of municipalities of the State. The constitutionality of such laws seems not to have been questioned, so far as our reported decisions disclose.

■ Our conclusion is that Chapter 800, Private Acts 1937, is not in violation of either section 8, Article 11, or section 8, Article 1, of the State Constitution.

Another contention made by assignment of error is that the trial court was in error in holding Chapter 800, Private Acts 1937, as applied to the appointment of relator as teacher for the year 1937-8, did not violate section 10, Article 1, of the Constitution of the United

States, and section 20, Article 1, of the Constitution of Tennessee.

The first of these constitutional provisions is that, "No State shall . . . pass any . . . Law . . . impairing the Obligation of Contracts." The second forbids the enactment of retrospective laws, or laws impairing the obligation of contracts. Defendants' contention is that the relator made an offer on April 14, 1937, when she made application for a teaching position for the year 1937-8; and that this offer was accepted on May 10, 1937, when the School Board elected her as a teacher. It is insisted that the rules, regulations and by-laws of the Board in effect on May 10, 1937, when relator was appointed, provided, among other things that:

"Married women shall not be appointed as teachers; and that marriage of any woman teacher shall be equivalent to an immediate resignation and shall terminate her contract of employment, provided, however, that this restriction shall not apply to those married women who have as married teachers been continually employed as regular teachers since 1919; and provided, further, that married women otherwise qualified may be employed as 'substitute teachers' or emergency teachers. (However, see XVIII Tenure.)"

Defendants contend that this by-law, or regulation, must be read into every contract made by the Board for the employment of teachers. The trial judge found that relator had no notice of this by-law. Whether she did or not is immaterial. The Board of Education, nor the City, can set up as against the State a by-law that runs counter to a legislative enactment. The Act here in question specifically sets forth the causes for which a teacher may be dismissed. Marriage is not among

the things specified. Furthermore, a teacher reading the above by-law, would turn to the parenthetical reference and there find Chapter 800, Private Acts 1937, set forth in full. Thus on defendants' own contention the Act became as much a part of the contract as the by-laws; but the by-law being antagonistic to the Act, must give way to the Act. It was competent for the legislature to discharge any obligation created by its agents in favor of the State or its creatures. In Elliott, Municipal Corporations (3 Ed.), section 301, the rule is there stated:

"In the exercise of the general power of control over the municipal corporation, the legislature must not impair any of the constitutional rights of third parties. The corporation itself may not acquire rights as against its creator in many cases; but its transactions may give rise to contracts under which the other party is protected by constitutional provisions against impairment of the obligations of a contract."

To the same effect, see McQuillin, Municipal Corporations, section 240. In *Williams, Rec., v. Baltimore*, 289 U. S., 36, 40, 53 S. Ct., 431, 432, 77 L. Ed., 1015, the court said:

"A municipal corporation created by a state for the better ordering of government, has no privileges or immunities under the Federal Constitution which it may invoke in opposition to the will of its creator."

To like effect is the case of *City of Worcester* v. *Worcester Consolidated Street Rwy. Co.*, 196 U. S., 539, 25 S. Ct., 327, 49 L. Ed., 591.

Our conclusion is that the Act here in question does not violate the constitutional provisions invoked by defendants and above mentioned.

The causes set forth in the Act here in question

authorizing the preferment of charges are exclusive of all other charges. When defendants refused to appoint relator as a teacher for the year 1938-9, because she was married they thereby undertook to add to the causes set forth in the Act a cause of their own creation. In *School City of Elwood* v. *State ex rel. Griffin*, 203 Ind., 626, 180 N. E., 471, 81 A. L. R., 1027, it was held that where a statute specifically enumerates causes for which a teacher may be dismissed, the teacher cannot be dismissed for any other cause. In *Butcher* v. *Charles*, 95 Tenn., 532, 32 S. W., 631, 632, it was held that the teacher of a public school could not be removed by the directors except for the statutory charges of "incompetency, improper conduct, or neglect of duty," as set forth in section 1192 (3), M. & V. Code. See, also, *People ex rel. Murphy* v. *Maxwell*, 177 N. Y., 494, 69 N. E., 1092.

By another assignment of error defendants complain that the trial court was in error in holding that relator had been employed for the third year from the time of her appointment. The language contained in section 1 of the Act material to the insistence is as follows:

"provided, that no persons occupying the positions of principals, teachers, or supervisors shall be deemed to be under civil service or permanent tenure unless they hold a certificate from the Department of Education of the State of Tennessee, and have been employed by the Board of Education of the City of Knoxville for the third year from the time of their appointment or employment.

Obviously this means school years. The trial judge found as a fact, as hereinbefore stated, that relator had been employed for three years, to-wit: 1935-6, 1936-7, and 1937-8. It is true that relator was dismissed during

her third year; but we construe the language of the statute as meaning the employment of a teacher for the third year from the time of his or her appointment, brings the teacher under the Act. The language of the Act is not that the teacher shall have served three years, but, on the contrary, the language is ''employed . . . for the third year.''

We conclude that relator was under civil service, as provided in the Act, and that her dismissal because of her marriage was unauthorized, illegal and void.

All questions made by assignments of error raising questions open for the consideration of this court have been examined, and are found to be without merit. The decree of the trial court is affirmed. Defendants will pay the costs of the appeal.

MR. SPECIAL JUSTICE KENNERLY did not participate in the decision of the case.