Lewis Frazer et al., Appellants,

*v.*

Joe C. Carr, Secretary, etc., et al., Appellees.

360 S.W.2d 449.

(*Nashville,* December Term, 1961.)

Opinion filed October 4, 1962.

WALLER, DAVIS & LANSDEN, Nashville, for complainants-appellants Lewis Frazer and others.

ROBERT H. JENNINGS, JR., City Attorney, PHILLIPS GULLETT & STEELE, Nashville, for defendants and cross-complainants-appellants, Ben West, Mayor, and City of Nashville.

BOULT, HUNT, CUMMINGS & CONNORS, Nashville, SHELTON LUTON, Davidson County Attorney, for defendants and cross-defendants-appellees, Beverly Briley, County Judge, and Davidson County and Metropolitan Charter Commission.

MILTON P. RICE, Assistant Attorney General, for George F. McCanless, Attorney General, and Joe C. Carr, Secretary of State.

HOOKER, HOOKER & WILLIS, Nashville, for Clifford Allen, County Tax Assessor.

568

Mr. Special Justice Tomlinson delivered the opinion of the Court.

This is a suit filed under the declaratory judgment law. Its purpose is to have declared void the recently established Metropolitan Government by a consolidation of all, or substantially all, of the governmental and corporate functions of Davidson County, (its population being more than 200,000) and of Nashville, its principal city. Section 6-3702 T.C.A.

Thus was created, unless the proceedings are void, a governmental entity, based upon a Metropolitan Charter, sec. 6-3711 T.C.A. Its governing body is a metropolitan council vested with ''all the authority and functions of the governing bodies of the county and cities being consolidated, with such exceptions and with such additional authority as may be specified elsewhere in this chapter'', sec. 6-3711(k) T.C.A.

The initial step in the creation of this metropolitan government is the preparation of the metropolitan charter by a charter commission created in either of two methods. One such method is that which may be created by private act of the general assembly in any county meeting the population requirements as condition precedent to the creation of a metropolitan governmental entity. Sec. 6-3704 T.C.A.

The private act method of creating the charter commission was the method used in this case. Chapter 408, Private Acts of 1961. This private act required a submission to the voters of (1) Davidson County, outside the limits of

Nashville, and (2) voters, exclusively in the City of Nashville, for ratification or rejection of the charter commissioners named and provided for by the private act. Each of the two sets of voters ratified the appointment of the persons designated. The private act method is mentioned at this time because it is one of the targets of those seeking an adjudication that the creation of this metropolitan government was brought about by unconstitutional procedure.

After months of dedicated service the charter commission, working without compensation, came up with a thoroughly prepared charter, which meticulously sought to foresee, within the limits of its supposed authority, all the needs of this particular metropolitan government, and to take care of these needs.

This completed charter, after deposit with the officers directed by the statute, was submitted for ratification or rejection to the two respective sets of voters after they were made aware of its contents by the distribution, insofar as practical, of hundreds of copies among the voters of the county and city, respectively, and the contents of the charter were otherwise made known to the voters before this election. At that election each of the two sets of voters ratified and approved the charter as prepared by the charter commission.

The constitutional amendment involved here was adopted in 1953. It is commonly known as the Eighth Amendment, and is an amendment to Article XI, Section 9. The language of this amendment is this:

"The General Assembly may provide for the consolidation of any or all of the governmental and cor-

porate functions now or hereafter vested in municipal corporations with the governmental and corporate functions now or hereafter vested in the counties in which such municipal corporations are located; provided, such consolidations shall not become effective until submitted to the qualified voters residing within the municipal corporation, and in the county outside thereof, and approved by a majority of those voting within the municipal corporation and by a majority of those voting in the county outside the municipal corporation.''

This amendment was submitted to the two sets of voters and was by each approved.

It will be noticed that this 8th Amendment is not self-executing. Therefore, as a condition precedent to its becoming effective, it must be implemented by legislative enactments. It was so implemented by Chapter 120 of the Public Acts of 1957, Chapter 199, Public Acts of 1961, and by Chapter 408, Private Acts of 1961. The two Public Acts are codified commencing at sec. 6-3701, T.C.A. Some of these code sections have hereinbefore been cited. The Private Act of 1961, hereinabove mentioned, being Chapter 408, is the one creating a metropolitan government charter commission for Davidson County and designating the members thereof, subject to the approval of the County and City voters, respectively, and designating their powers, duties, etc.

Chancellor Woodlee, of the Twelfth Chancery Division, was legally designated by the Chief Justice of this Court to hear the case, after the Davidson County Chancellor into whose court it fell, had disqualified himself. Chancellor Woodlee, in a superbly worded and excellently

reasoned opinion, adjudged this metropolitan government to be a validly established governmental entity. From his decree so adjudging, those attacking the validity of the creation of this metropolitan government have appealed to this Court.

It may be that the duties of this Court with reference to these issues would have been fully performed had it simply affirmed the excellent opinion of Chancellor Woodlee, without further remarks, and ordered the publication of that opinion. But it is thought best to write an opinion, since such is commonly expected of this Court when acting upon an appeal in a case of the importance of the one at bar.

Considered in what the Court thinks is logical order, the first insistence of appellants is that Chapter 408, Private Acts of 1961 is unlawful class legislation; hence constitutionally invalid. Wherefore, they say, the charter commission was not legally constituted; therefore that the charter must fall.

To understand this assignment of error, it is well to review the background of this Private Act of the Legislature.

In 1957, the Legislature enacted Public Act, Chapter 120, Section 6-3701 et seq., T.C.A. to implement constitutional amendment, No. 8, since that amendment is not self-executing. Chapter 120, after authorizing the creation of a metropolitan government in counties having a population of two hundred thousand (200,000) or more, sec. 6-3703, specified the manner in which the members of such charter commission should he appointed, sec. 6-3704, T.C.A. In 1961 our General Assembly by Public Act, Chapter 199, amended the 1957 Public Act by adding

this additional method of creating this charter commission, to-wit:

"Said charter commission may be created in the manner prescribed by private act of the General Assembly of any county meeting the population requirements" (the minimum county population being two hundred thousand as required by the 1957 Public Act.)

It is a matter of common knowledge that Shelby, Davidson, Hamilton and Knox Counties meet this population requirement.

It is admitted in one of the briefs for appellants that:

"This provision was applicable to all counties with a population of 200,000 or more, clearly a reasonable classification under our decisions."

The classification is reasonable because we all know that it is in these large counties that the problem of the large cities as to the ever increasing population just beyond the corporate limits becomes more acute, complex, and confusing.

Thus it is that the 1961 amendment permitting the selection of the members of the charter commission by private act is made applicable to every county coming within a classification which is admitted, and properly so, to be a reasonable classification.

So it is that the amendment of 1961 is not a law arbitrarily suspending the general law for the benefit of one county. It is a law applicable to every county which falls within an admittedly reasonable classification.

*Town of McMinnville v. Curtis*, 183 Tenn. 442, 192 S.W.2d 998, relied upon by appellants, is not in point. In

that case a Private Act arbitrarily extended to McMinn-ville a privilege withheld by the general law from every other municipality in the State. It was, of course, adjudged unconstitutional. In the course of its opinion in that case, the Court said:

"It is, of course, settled law that special legislation affecting particular counties or municipalities in their governmental or political capacities may be enacted without violating Article XI Section 8, of the Constitution. *Knoxville, City of, v. State ex rel. Hayward,* 175 Tenn. 159, 167, 133 S.W.2d 465. Many such acts had been upheld by this Court. But in those cases the special act either was not in conflict with the provisions of the general law, or the classification was upon a reasonable basis."

As hereinbefore observed, it is properly conceded that in the case at bar the classification is upon a reasonable basis. Moreover, it applies to every county within the general law authorized to create a metropolitan government.

For the reasons above stated *Board of Education of Memphis v. Shelby County,* 207 Tenn. 330, 339 S.W.2d 569, also relied upon by appellants, is not applicable. In that case the legislature had arbitrarily enacted a private act applicable to Shelby County alone with reference to the division of State school funds and perhaps other such school funds between Memphis and the County. This special act was contrary to the general law upon the subject. Evidently the sponsors of Shelby County as against its principal city, Memphis, had doubts as to the constitutionality of this special Act. Therefore, in drafting into the school law a provision as to division of

school funds there was inserted a clause providing that the private acts on the subject applicable alone to Shelby County should remain in full force and effect. It was adjudged that the writing into the general school law of a direction that this law would not apply to the already enacted private act applicable to Shelby County alone was a direction that could not be upheld under Article XI, Section 8 of the Tennessee Constitution.

 It results that, in this Court's opinion, the private act of 1961, Chapter 408 of such act is not an unconstitutional enactment, and the members of the Metropolitan Charter Commission were legally appointed by reason thereof; hence, that the charter prepared by this commission is not invalid for that reason.

Next in logical sequence is the insistence that the charter prepared by the Charter Commission is void because the statute under which this charter was prepared amounted to an unconstitutional delegation to the charter commission by the Legislature of its (the Legislature's) duty to legislate. Article 2, Section 3. This insistence refers to the public acts of 1957, and its 1961 amendment, and the private act of 1961 heretofore discussed.

The decisions cited in support of appellants insistence here are those decided prior to the 1953 amendment No. 8 to the 1870 Constitution. Any requirement of the 1870 Constitution which is in conflict with the 1953 Constitutional amendment must give way to this amendment. It is necessary therefore to first determine just what authority, if any, was given by the 1953 amendment to the legislature with reference to the delegation of its legislative authority, as to the creation of a metropolitan government.

For clarity there is repeated here so much of the 8th Amendment as is pertinent: It is this:

"The General Assembly may provide for the consolidation of any or all of the governmental and corporate functions now or hereafter vested in municipal corporations with the governmental and corporate functions now or hereafter vested in the counties in which such municipal corporations are located; * * *."

Attention is at once attracted to the expression in this amendment, to-wit,—"The General Assembly *may provide for* * * *" (Emphasis added). It is said in the text of 98 C.J.S. Word, Page 711 that the meaning of a word "is frequently governed by the * * * purpose and object in view." The object in view in the drafting of this 8th amendment was to authorize consolidation of county and city government in particular counties. The members of this constitutional convention necessarily knew that conditions and needs in these counties would vary from county to county; and that it probably might not therefore by one general statute meet the varying needs or correct the varying evils existing in each of these counties. It is sensible therefore to conclude that what the Constitutional Convention had in mind in using the expression "provide for" was to authorize the Legislature to authorize an arrangement whereby the needs of, and reliefs to, each such county and principal city in that county would be placed in the hands of representatives therein who respectively knew the respective needs of such governmental entities. Viewed from that common sense point of view, this amendment by its expression "provide for" authorized the 1957 Public Act to cause a Metropolitan Charter to be determined by a

commission composed of members familiar with the situation prevailing in a particular county wherein there was to be prepared a charter for a metropolitan government.

This construction of the 1953 constitutional amendment seems to be further fortified to some extent by the provision in this amendment that such charter should not take effect unless approved by a majority of the voters in the county, as distinguished from those in the principal city in an election to be held for that purpose, also approved at such an election by the majority of the city voters.

In this connection, it is quite untenable to say that the efficacy and acceptance of a law can not be decided by a vote of the people in an election held for that purpose when authorized by the constitution. Whatever may have been the law on this question prior to the 1953 constitutional amendment, it was no longer the law after the adoption of that 8th amendment.

Since it was the manifest intention of the Convention to give to certain counties the authority to correct certain evils, or undesirable conditions, and since this Convention knew these evils and undesirable conditions would necessarily vary as between counties, and the principal cities therein, there is no escape from the conclusion that by this 8th Amendment, the Convention intended to authorize the procedure adopted by the 1957 statute for the formation of a metropolitan charter; hence that amendment was not violated by the Public Acts of 1957, Chapter 120.

▮ Moreover, a reading of this Chapter 120 discloses it to be a fact that it, Chapter 120, constructed the framework, or as one brief calls it, "the guide lines" which

should govern the Metropolitan Charter Commission in the preparation of a charter suitable for the needs of the particular governmental entity it was serving. The people apparently so construed it. They approved the constitutional amendment. They approved the commissioners designated to prepare the charter in question here. They approved the charter which that commission adopted. So it must be concluded that their understanding of the 8th Amendment was the same as that of this Court. It is concluded that the 1957 Public Act, as amended by Chapter 199, is a constitutional enactment which authorized the charter in question here.

■ Next, it is insisted that this charter "violates Article II, Sections 28 and 29 of the Tennessee Constitution. Section 28 provides that all property shall be so taxed as to be equal and uniform throughout the state. By section 29 authority is given to counties and corporations to impose taxes for county and corporation purposes respectively in such manner as shall be prescribed by law." Again, in considering this assignment of error, consideration should first be given to the existing physical conditions.

The 8th Amendment to the Constitution is that "The General Assembly may provide for the consolidation of any or all of the governmental and corporate functions" of a county and a corporation therein.

The charter submitted to the people and by them ratified, did, in accordance with this constitutional authority, and in accordance with sec. 6-3704 (a) T.C.A. propose the consolidation of all, or substantially all, of the governmental and corporate functions of Davidson County and of its principal city, Nashville, and "the creation

of a metropolitan government for administration of the consolidated functions.''

One of the briefs calls attention to the holding in *Swain v. Smith*, 174 Tenn. 688, 698, 130 S.W.2d 116, 120, viz:

''The dictionary definition of consolidate in law is 'To cause to be united and extinguished in a superior right or estate by both becoming vested in the same person; to merge.' Webster's New International Dictionary.

''By the consolidation of legal entities, the constituent bodies are united or merged into a new organization and as a rule no longer exist.''

It results that the government of all, or practically all, of Davidson County and of Nashville, respectively, ceased to exist and that a new governmental entity, to-wit, the Metropolitan Government, was created for the government of Nashville and Davidson County.

It is of course a fact that many services will necessarily be rendered and furnished the citizens and property holders of Nashville that will not, and can not at this time, be rendered or furnished to citizens and property holders residing beyond the corporate limits of Nashville. As the Chancellor put it, the same services, etc. can not be rendered to a farmer whose property, etc. is outside of, and distant from the residents in Nashville. In that situation, as so effectively stated by the Chancellor:

''To argue that the farmer in the outlying area of Davidson County, without benefit of urban services, must be taxed at the same rate as the property owner

residing within the Urban Services District, with benefit of urban services, actually ignores the principle of equal and uniform taxation, Sections 28 and 29 of Article II.''

In *Louisville & N. R. R. Co. v. State,* 55 Tenn. 663, 786, is the following statement appropriate here:

"Constitutions", said Mr. Story, "are instruments of a practical nature, founded on the common business of life, adapted to common wants, designed for common use, and fitted for common understandings. The people make them, the people adopt them, they must be supposed to read them with the help of common sense. * * * They must be interpreted in the light of practical sense and *enforced according to their manifest intention.''* (Emphasis added)

The metropolitan government created two service districts; to-wit, (1) the general service district, embracing the total area of the county, and (2) the urban service district, consisting "of the total area of the principal city.''

Provision is made for the levying by the governing body of the metropolitan government of taxes (1) to meet the needs of the general services district, and (2) of the urban services district. Since the metropolitan government is a consolidation of the urban government and of the county government, it is in exact keeping with that which has always been true in this state, that one tax is levied for the municipal government according to its needs, and another for the county in accordance with its needs.

To hold that Amendment 8 intended to abandon this traditional law and practice is to attribute to that amend-

ment a construction of an impractical nature, not "founded on the common business of life", or "adapted to common wants", not "designed for common use", or "fitted for common understandings." The people of Davidson County outside the urban services area, who "are supposed to (have) read them with common sense" would never have approved a tax imposed upon them for services they could not be given, as could those in the urban area.

Moreover, it must be assumed that the authors of the Eighth Amendment, all busy men, did not attribute to this amendment an intention to require a tax of equal amount between the two districts. These sensible members of the Constitutional Convention knew such a construction would mean the infliction by the people of the county of a death blow to the amendment when it should be submitted to them for ratification. Surely these busy men would not have so wasted their time.

In this connection, much is said as to observations of one of the delegates to the Constitutional Convention as to this Eighth Amendment. Appellants and appellees disagree as to the meaning of these observations. These contrarily construed observations are of no use to the Court, since the construction of Amendment 8, considering all the surroundings, circumstances and intentions, is obvious to the Court. But there is one remark of this delegate, which is pertinent to the question of taxation, now being discussed. It is this:

"Let us now open another gate to the future development and progress in popular government in Tennessee, and give the people abundant opportunity to improve on what we have."

The improvement sought by the 8th Amendment was a consolidation of the municipal and county governments into a metropolitan government, with the authority of both the previous governmental entities.

For these delegates to have intended, in the exercise of the consolidated power, that the Metropolitan Government levy the same tax in the county area as that to be levied in the urban area, would not have resulted "in the opening of another gate to the future development and progress in popular government in Tennessee * * *." That "gate" would have been closed with a resounding bang by the voters in the county had they been saddled with taxes for services which they knew could not be rendered them, and the members of the convention necessarily knew this; and thus knew the amendment would "die aborning", if such an unjust and unequal tax should have been intended.

The situation being as above depicted, it is quite reasonable to conclude that it is required that the 8th Amendment authorized a different tax in the county from that to be levied in the urban (municipal) area. And to the contrary, to otherwise construe it, would have been to destroy it at the hands of the voters.

The metropolitan government is but a consolidation of the county and city government. Article II, Section 29 of the Constitution empowers the General Assembly to authorize each county and incorporated town to impose taxes for county and corporation purposes, respectively. Since the metropolitan government is but a consolidation of the functions of each, there seems to be no logical course of reasoning whereby this metropolitan government is not authorized to levy taxes sufficient for county

purposes in Davidson County, and a different tax sufficient for the municipal corporation of Nashville. The needs and services of the two are different, thereby requiring a different tax rate.

On principle, that above held is compelled to be correct, in this Court's opinion. Moreover, it is supported by precedent. Read *Ernest v. Green County,* 138 Tenn. 442, 198 S.W. 417.

The Court concludes that the taxing provisions of the metropolitan government and the urban government do not violate Article II, Section 28 of the Constitution.

█ It is next insisted that this charter violates Amendment 6 of the 1953 Convention, in that it abridges the terms of office for which certain officials of Nashville, including its Mayor, were elected.

Amendment 6 forbids the General Assembly from passing a special local or private act having the effect of removing the incumbent of a county or municipal office prior to the ending of his term, or altering his salary during such term. This Amendment No. 6, known as the "Anti-Ripper" provision, had for its purpose the putting an end, as Chancellor Woodlee says, "to legislating people out of office by Private Act." Chancellor Woodlee then continues,—"Here, however, the removal from office of any incumbents of the municipal or county government is effected by operation of a general law."

That general law, being the 1957 Act, sec. 6-3702, T.C.A. provides that after consolidation into a Metropolitan Government, none of the offices of the city or county, except as otherwise herein provided, shall be continued. Then the Chancellor correctly concludes, in the opinion of this Court, "that the municipal or county offices which

have been abolished, or the terms of certain local offices abridged, result from the provisions of a General Act, not a Private Act." Therefore, Amendment 6 does not apply to proceedings under Amendment 8, providing for the consolidation of municipal and county governments into a metropolitan government.

■ Next, it is insisted that the school system adopted by the Metropolitan Charter amounts to the abolition by a private act, of the General Law establishing a county school system. Here again, it must be recognized that the Metropolitan Act is a consolidation of county and city governments. A city and county may have different school systems as to the appointment of school officials, or may be governed by the same laws. So it is that a metropolitan government may, by reason of its peculiarities, also properly have a different system for the operation of the schools falling within the jurisdiction of this distinctly new and distinctly different governmental entity.

■ Certain other objections, some not raised in the assignments of error, to the Metropolitan Charter are made in one or the other of the appellants' briefs. They are objections which do not affect the constitutionality of the Metropolitan Charter. If such objections therefore are well taken, they may be taken care of by elision. The Charter provides for elision.

They should not, therefore, be considered until an individual interested personally in a particular provision affecting him or her raises the question as to that particular provision. This is made clear by *Davidson County v. Elrod,* 191 Tenn. 109, 110, where at page 114, 232 S.W.2d 1, at page 3, that "whether those provisions

must be elided should await a case in which'' a proper party should raise the question; that until then such question should be pretermitted. The Chancellor held that until then such question would be premature. This Court so agrees, as above indicated.

The Frazer brief takes the position that it can not be said with any degree of accuracy that some of the various groups of voters would have voted for the charter if the particular provision in which such group is interested had not been in the charter when such group or groups voted to approve that charter. The very obvious fact, however, is that when the charter was submitted to the voters before the election, the severability clause was therein. See Article 21. The language of this severability clause is rather strong. It is as follows:

"The people further declare that to achieve this remedial objective and to aid in the solution of the public problems of a metropolitan area, it is their purpose and intent in its adoption that this charter shall continue in full force and effect even if any of its separable provisions or parts are not essential to this remedial objective shall be held unconstitutional or void."

All such groups of persons who allegedly voted for this charter knew, therefore, or must be so presumed, that if the particular provision in which they were personally most interested should be invalid, it would be elided, when the question with reference thereto is properly made in judicial proceedings by interested parties.

Numerous cases from other jurisdictions are cited and discussed in some or all of the various lengthy and able briefs. This Court has not thought it necessary to notice

these, because the decisions of this Court and the obvious meaning of Amendment No. 8, and the constitutionality of the implementing statutes made these foreign decisions, charters, and statutes immaterial to the issues in the case at bar. This is also true as to a number of our own cases, not pertinent to these issues. Many of them were decided before the 8th Amendment came into being. To have discussed all these decisions and foreign charters and decisions with reference to their charters would uselessly have made this already quite lengthy opinion almost interminably lengthy.

In conclusion, however, the Court thinks it useful to repeat the remark, in the closing pages of the brief filed in behalf of appellees, the County Judge of Davidson County et als. The closing statement here referred to is:

"To be invalid a statute must be 'plainly obnoxious to some constitutional provision.' *City of Chattanooga v. Fanberg* [Fanburg], 196 Tenn. 226, 235 [265 S.W.2d 15, 42 A.L.R.2d 1200], (1954)."

This Court finds in this Metropolitan Charter nothing "obnoxious to some constitutional provision" of this state.

Too much importance can not be placed upon the fact that Constitutional Amendment No. 8 was approved by a vote of the people, as was every step taken during the development of this Amendment No. 8. And each such election was a mandate of that proposed Amendment No. 8.

Moreover, it is quite clear from the very provisions of this constitutional amendment, and the subsequent developing steps, that this amendment and the subsequent

documents upon which they favorably voted, would never have been approved by them, except for the fact that they, the people, gave to this amendment and subsequent proceedings the construction which this Court has adjudged the proper construction. And, after all, this is the people's government. Their wishes, constitutionally expressed, must prevail, no matter how much it upsets the previous status quo.

The decree of the Chancellor will be affirmed with all costs adjudged as therein decreed.