Housing Authority Projects — Voting Requirements Title 63 O.S. 1055 [63-1055] (1968), paragraphs 4 and 5 is a general and not a special law and therefore is constitutional. The Attorney General has had under consideration your recent letter wherein you ask: Are paragraphs 4 and 5 of 63 O.S. 1055 [63-1055] (1967), constitutional? 63 O.S. 1055 [63-1055] (1967), reads in relevant part: "Provided, however, that if a petition signed by not less than five per cent (5%) of the legal registered voters of the city or county affected, as the case may be, is submitted to the governing body within thirty (30) days of the adoption of said resolution then said resolution shall be ineffective until approved by a majority of those voting on the question at a special or general election, provided that in the event said resolution is not approved by a majority of those voting at any special or general election, then the same or a similar resolution shall not be adopted by the governing body for a period of one (1) year thereafter. "Provided further, however, in all cities and counties of less than two hundred thousand (200,000) population, according to the last Federal Decennial Census, all projects not authorized prior to July 1, 1968, shall be ineffective until approved by a majority of those voting on the question at a special or general elect.'on; except projects authorized under the provisions of Section 1057 of this Act." (Emphasis added) That part underlined above is the portion amended by the 31st Legislature when it enacted S.B. No. 258. Article V, Section 59 reads: "Laws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted." 82 CJ.S., Statutes, Section 191, page 309, states: "The classification of counties, municipal corporations, and other local government bodies may properly be based on population, . . . if such classification is reasonably related and adopted to the subject or purpose of the statutes, . . . It is essential that the classification be made in good faith, that there be a substantial difference in population, for the legislative purpose, that is, that the spread of population be broad enough to include or segregate a substantial class, and that it apply, without a change in legislation, to all other municipalities and governmental bodies if and when they attain statutory population." "On the other hand, classification by population cannot be arbitrarily and unreasonably used; and where differences in population afford no rational basis for discrimination between groups of the same natural class, and the population figures, adopted as the basis of classification, have no reasonable relation to the subject and purpose of the statute, the statute is special or local within the constitution prohibitions." The case of Roberts v. Ledgerwood, 134 Okl. 152,272 P. 448, which has been referred to by our courts in numerous cases since, says: "In order for a law to be general in its nature and to have a uniform operation, it is not necessary that it shall operate upon every person and every locality in the state. A law may be general and have local application or apply to a designated class if it operates equally upon all the subjects within the class for which it was adopted." In Isaacs v. Oklahoma, Okl.,437 P.2d 229, `the' Supreme Court of Oklahoma in determining the constitutionality of 11 O.S. 1601 [11-1601] — 11 O.S. 1620 [11-1620] (1961), an act made applicable to cities having a population over 100,000, and applying only to Oklahoma City and Tulsa said: "Under the provisions of the third Act, which is at issue here, no such voting rights are granted to the voters in cities with a population of 100,000, but the authority to exercise the rights granted by the Act is vested in the governing body of such city, who shall, by appropriate resolution, proceed to exercise the authority granted by the Act. "Plaintiff argues that to deprive the citizens of a city with a population of 100,000 of the right to vote on such an issue is unreasonable and arbitrary and violates the equal protection of law guaranteed by the Fourteenth Amendment of the U.S. Constitution and the requirement of the Oklahoma Constitution that laws of a general nature shall have uniform application throughout the state. "Neither are we inclined to attach great significance to the argument that the Act is an example of a special or local law which is prohibited by our Constitution. At the time of the enactment of the Act in question it applied only to Oklahoma City and Tulsa, as they were the only cities in Oklahoma with a population in excess of 100,000. Such limitation does not of itself constitute an arbitrary or capricious classification. As we stated in the case of Lowden v. Oklahoma County Excise Board, 186 Okl. 706,100 P.2d 448, at page 450: `In order for a law to be general in its nature and to have a uniform operation, it is not necessary that it shall operate upon every person and every locality in the state. A law may be general and have a local application or apply to a designated class if it operates equally upon all the subjects within the class for which it was adopted.' "The courts of other states, when faced with the same argument as espoused by plaintiff here have uniformly held that such classification, based on population, not to be violative of constitutional requirements similar to our own. See Williamson v. Housing Authority, etc., of Augusta, 186 Ga. 673, 199 S.E. 43, State ex rel, Porterie v. Housing Authority of New Orleans, 190 La. 710, 182 So. 725; Frazer v. Carr,210 Tenn. 565, 360 S.W.2d 449 (1952)." The Supreme Court has dealt with the question of whether particular classification provisions as to population make an otherwise valid general law into an invalid special or local law many times. Generally, the court has upheld so-called "top-bracket" classification laws and those which classify comprehensively. See, for example, Caddo County v. Chicago, R.I. P. Ry. Co., 155 Okl. 32, 7 P.2d 900
(1932); Wade v. Board of Com'rs of Harmon County, 161 Okl. 245,17 P.2d 690 (1933); In Re Bucher, 162 Okl. 168,20 P.2d 150 (1933); Protest of Chicago, R. I. P. Ry. Co., 164 Okl. 72, 22 P.2d 1002 (1933); and Baker v. Breeden, 165 Okl. 12, 24 P.2d 293 (1933). 82 CJ.S., Statutes, Section 192, page 312, says: ". . . it is the general rule that the fact that at the time a statute is enacted only one municipality or county falls within the classification fixed thereby will not render the classification unreasonable and the statute special or local, rather than general, if the classification is founded in reason and is general in terms. However, a statute will be invalid as local or special if the classification is arbitrary and illusory, the test being whether other municipalities or counties from time to time may be included, or are permanently excluded." In view of the above authorities, it seems that paragraph 5 of 63 O.S. 1067 [63-1067], Section 63 O.S. 1055 [63-1055] [63-1055], is based on the so-called "top-bracket" classification and although at the present time Oklahoma City and Tulsa are the only cities or counties within the class, the statute has not closed the class whereas other cities or counties may not enter the class at a future time. Furthermore, it seems evident that the majority of housing authority projects would be in Oklahoma and Tulsa Counties and to call a special election each time a project was needed would be both expensive and impractical. It is well established that an act will not be declared unconstitutional unless its conflict with the Constitution is clear and certain. State ex rel. Independent School District No. 1 of Tulsa County v. Williamson, Okl. 352 P.2d 394. It is therefore the opinion of the Attorney General that 63 O.S. 1055 [63-1055] (1967), paragraphs 4 and 5 is a general and not a special law and therefore is constitutional. (W. J. Monroe)