**William W. FARRIS et al., Appellants,**

**v.**

**Leonard Ray BLANTON et al., Appellees.**

Supreme Court of Tennessee.

Oct. 10, 1975.

---

C. Cleveland Drennon, Jr., County Atty., Brian L. Kuhn, Asst. County Atty., for appellants Farris, and others.

John D. Martin, Jr., Martin, Tate, Morrow & Marston, Memphis, for appellees.

D'Army Bailey, Memphis, for Squire Walter Lee Bailey, Jr., individually.

Robert H. Roberts, Advocate Gen., for Governor Blanton and other State Officials.

## OPINION

HENRY, Justice.

This declaratory judgment action, brought pursuant to Sec. 23–1101 et seq., T.C.A., focuses upon the constitutionality of Chapter 354 of the Public Acts of 1975 designed, according to its caption, "to provide for a run-off election in counties with a mayor as head of the executive or administrative branch of the county government". This law applies only to Shelby County, Tennessee.

Arrayed on opposite sides of the issue are the Chairman of the Shelby County Quarterly Court and four members, who assert

the unconstitutionality of the statute, and four other members of the Court, the Shelby County Commissioners and the Shelby County Election Commission, all of whom assert its constitutionality.

All sitting chancellors in Shelby County very properly recused themselves and the Chief Justice designated Chancellor Len G. Broughton of Knoxville to hear and determine the controversy.

Chancellor Broughton held the Act to be constitutional and this appeal ensued.

I.

The controlling issue presented on this appeal is whether Chapter 354 of the Public Acts of 1975, though general in form, is local in application and effect and thus requires ratification in the manner prescribed by Article 11, Section 9 of the Constitution of Tennessee, commonly known as the "Home Rule" amendment.

The second paragraph of Article 11, Section 9, was adopted by the Limited Constitutional Convention of 1953, and submitted to the electorate as Amendment No. 6, in an election conducted on 3 November 1953. Pursuant to approval the Governor proclaimed adoption on 19 November 1953. This amendment provides:

> The General Assembly shall have no power to pass a special, local or private act having the effect of removing the incumbent from any municipal or county office or abridging the term or altering the salary prior to the end of the term for which such public officer was selected, and any act of the General Assembly private or local in form or effect applicable to a particular county or municipality either in its governmental or its proprietary capacity shall be void and of no effect unless the act by its terms either requires the approval by a two-thirds vote of the local legislative body of the municipality or county, or requires approval in an election by a majority of those voting in said election in the municipality or county affected.

Since 19 November 1953, it has been firmly established that any and all legislation "private and local in form *or* effect" affecting Tennessee counties or municipalities, in any capacity, is absolutely and utterly void unless the Act requires approval of the appropriate governing body or of the affected citizenry.

The test is not the outward, visible or facial indices, nor the designation, description or nomenclature employed by the Legislature. Such a criterion would emasculate the purpose of the amendment. The whole purpose of the Home Rule Amendment was to vest control of local affairs in local governments, or in the people, to the maximum permissible extent. The sole constitutional test must be whether the legislative enactment, irrespective of its form, is local in effect and application.

We gauge Chapter 354 of the Public Acts of 1975 by this standard. Omitting the sponsors (51 in the House; 2 in the Senate) the Act reads as follows:

> AN ACT to amend Tennessee Code Annotated, Title 5, Chapter 1, to provide for a run-off election in counties with a mayor as head of the executive or administrative branch of the county government.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF TENNESSEE:

SECTION 1. Tennessee Code Annotated, Title 5, Chapter 1, is amended by adding the following:

> In all elections for mayor in a county with a mayor as head of the executive or administrative branch, a candidate must receive a majority of the votes cast for the office of mayor, and if no candidate receives such a majority of votes, then a run-off election shall be held four (4) weeks thereafter wherein the names of the two (2) candidates receiving the highest number of votes cast for the office of

mayor shall be placed on the official ballot or voting machine, and the candidate receiving a majority of the votes cast in the run-off election shall be elected. However, in counties whose charter provides for the date of the run-off, the charter provision shall determine the date, and not the legislative body as set forth by this Act.

SECTION 2. This Act shall take effect upon becoming a law, the public welfare requiring it.

■ Within the framework of the test hereinabove announced we must determine whether this legislation was designed to apply to any other county in Tennessee, for if it is potentially applicable throughout the state it is not local in effect even though at the time of its passage it might have applied to Shelby County only. But in determining potential applicability we must apply reasonable, rational and pragmatic rules as opposed to theoretical, illusory or merely possible considerations.

## II.

■ Those who support the constitutionality of this enactment would have us equate the county mayor with the mayor of a metropolitan government. To this we cannot agree.

Ninety-three counties of Tennessee have the conventional form of County Government, with a County Judge or Chairman as the Chief Administrative officer (with sorely limited executive responsibilities and powers). Davidson County has a consolidated city-county government operating under the name and style of The Metropolitan Government of Nashville and Davidson County.

In 1974, in an obvious and commendable effort, to create a more stable and responsive county government, the people of Shelby County, through their elected represent-

atives procured the passage of Chapter 260 of the Private Acts of 1974. This enactment was conditioned upon the approval by a two-thirds (⅔s) vote of the Quarterly County Court of Shelby County, within forty-five (45) days after approval of the Chief Executive of the State of Tennessee. It was further subject to the approval of a majority of the voters of Shelby County, voting in a referendum to be held on August 1, 1974. It was approved by the Governor on 21 March 1974 and the certificate of its ratification is on file in the office of the Secretary of State.

The phraseology of the question presented to the electorate was approved by this Court in *Rodgers v. White, et al.* (Tenn. 1975).

This enactment is generally known as the Shelby County Restructure Act. It vests the government of Shelby County in a mayor-county court form of government, and contains the broadest form of conference of powers. The executive and administrative powers are vested in a county mayor and the Act provides that the first county mayor shall be elected in a special election to be held 9 October 1975.[1]

It should be emphasized that Chapter 260 of the Private Acts of 1974, has absolutely no effect on the government of the City of Memphis.

Shelby County stands unique among the counties in Tennessee. It, and it alone, has a county mayor. No other county may have such a form of government except by the affirmative action of the General Assembly. There is no general enabling act under which any other county may opt to so operate. Thus, Chapter 354 of the Public Acts of 1975 relates to Shelby County alone.

The Metropolitan Government of Nashville and Davidson County stands on an entirely different footing. Amendment No. 8, proposed by the Limited Constitutional

---

1. We expedited the hearing of this appeal and a decision in order to avoid the uncertainty and confusion which would have re-
sulted had this issue not been timely decided.

Convention of 1953, approved by the people and proclaimed by the Governor, provides in part:

> The General Assembly may provide for the consolidation of any or all of the governmental and corporate functions now or hereafter vested in municipal corporations with the governmental and corporate functions now or hereafter vested in the counties in which any such municipal corporations are located . . . .

Pursuant to this proviso the General Assembly adopted Chapter 120, of the Public Acts of 1957, carried forward in the official Code as Sec. 6–3701 et seq., T.C.A. In general terms this was an enabling act permitting each county within the state, without regard to population, and the municipal corporations within such county, to consolidate all, or substantially all, of their governmental and corporate functions. It was specified that the Charter would provide for "the names or titles of the administrative and executive officers of the metropolitan government". Sec. 6–3711(n).

This statutory scheme obviously contemplates a consolidated government with a single executive head. Nashville and Davidson County brought themselves under its provisions. It could have designated the resulting governmental entity as:

a. The Nashville Metropolitan Government, or

b. The Davidson County Metropolitan Government, or

c. The Metropolitan Government of Nashville and Davidson County (which it selected),

or

d. Any other name as the Charter Commission shall deem historically and geographically appropriate. Sec. 6–3711(c).

The Chief Executive officer, might be given any designation determined by the Charter Commission. Assuming that he was to be designated as "Mayor" the resulting title would have been:

a. The Mayor of Metropolitan Nashville, or

b. The Mayor of Metropolitan Davidson County, or

c. The Mayor of Metropolitan Nashville and Davidson County, or

d. The Mayor of such other designation as the Charter Commission deemed appropriate.

Thus it follows that Nashville and Davidson County, or any other principal city and county in the state may have a county mayor, but he would be the chief executive officer of a consolidated entity and not merely the executive head of a single coordinate branch government. He would not be a "County Mayor" as contemplated in Chapter 354 of the Public Acts of 1975.

For these reasons, it is a fallacy to attempt to equate the County Mayor of Shelby County with the Mayor of the Metropolitan Government of Nashville and Davidson County, or with any mayor of any consolidated government which may hereafter emerge under the Metropolitan Government enabling act.

### III.

This court had under consideration an analogous situation in *Lawler v. McCanless*, 220 Tenn. 342, 417 S.W.2d 548 (1967). By Chapter 122 of the *Public* Acts of 1965, the Legislature undertook to amend the *general* law establishing courts of General Sessions in certain counties. The amendatory act applied, by population classification, to Gibson County alone. This public act was attacked upon the ground that it violated Article 11, Section 9 of the Constitution of Tennessee in that it did not provide for ratification in the prescribed manner. The Court phrased the issue thusly:

> The question for our determination is whether the amendatory Act of 1965 is local in form or effect and applicable to Gibson County alone in its governmental capacity. 417 S.W.2d at 551.

Among the arguments advanced to support the constitutionality of the Act was the fact that the "Legislature labelled the amendatory Act a Public Act".

The court rejected this argument and held that the Public Act in question was "an Act local in effect applicable to Gibson County alone and violates Article XI, Section 9, of the Constitution of our State and is void".

We reaffirm *Lawler* and apply its rationale to the instant case.

Our attention has been called to a memorandum opinion rendered by Justice Harbison, while sitting as Special Chancellor of Part I of the Chancery Court of Davidson County, in 1968, in the matter of *The Appointment of a Process Server.* Involved was Chapter 530 of the *Public* Acts of 1968, which authorized judges, in counties within certain population brackets (Knox and Davidson) to appoint process servers, under certain conditions. An attack was made on the basis of Article 11, Section 9 of the constitution. Special Chancellor Harbison, held, in pertinent part:

> There is no provision in Chapter 530 for such local approval, either by vote of the legislative body or by the people. Therefore, if Chapter 530 is "local in form or effect applicable to a particular county or municipality either in its governmental or proprietary capacity" the statute violates the home rule amendment.

> The Court is of the opinion that the subject statute is such a local Act. At the time of its passage, only two counties of the state were affected by the population classification set out therein. The statute is not local in form, because it was enacted as a Public Act. This, however, in and of itself is of no significance. If the statute is local in effect, then it must comply with the home rule amendment. See *Lawler v. McCanless*, 220 Tenn. 342, 417 S.W.2d 548, 550 (1967).

The appellees place strong reliance upon the decision of the Court of Appeals for the Middle Section in *Boone v. Torrence*, 63 Tenn.App. 224, 470 S.W.2d 356 (1971), and particularly cite us to the following portion of the opinion:

> We cannot agree with this insistence. Regardless of what the sponsors of the Act may have intended it to be, we do not believe the General Assembly intended for it to be a private or a local Act, for at least two reasons:

> First, because it purports to amend a Code Section which is a general law; and second, because it contains no language which requires local approval thereof as required by the express provisions of Article 11, Section 9, supra. In *Winter v. Allen* (1963), 212 Tenn. 84, 367 S.W.2d 785, and *Frazer v. Carr* (1962), 210 Tenn. 565, 360 S.W.2d 449, the Supreme Court held that 6–3701 et seq. is a general law. 470 S.W.2d at 366.

We do not fault this as a general statement of the law; however, we must read it in the context of its pronouncement. The Court was dealing with a Public Act amending the Public Act enabling cities and counties to merge their operations into a metropolitan form of government. Here we look to substance and not to form, and in so looking, the conclusion is inescapable that in the last analysis, Chapter 354 of the Public Acts of 1975 was in actuality an amendment to Chapter 260 of the Private Acts of 1974.

Strong reliance is also placed upon *Doyle v. Metropolitan Government,* 225 Tenn. 496, 471 S.W.2d 371 (1971). In that case the Court was dealing with an amendment to Sec. 6–202(16), a general law having statewide application "to all those who desire to come within its purview". The Court was very careful to point out that "nowhere in (the act) can we glean any intention of the Legislature that this Act was to apply solely to the Metropolitan Government of Nashville and Davidson County".

Appellees further rely upon *Metropolitan Government of Nashville and Davidson County v. Reynolds,* 512 S.W.2d 6 (Tenn.

1974). Again the Act under scrutiny applied "to all counties, opting for a metropolitan form of government". The Court pointed out that "because the sections are general and amendatory of the state election laws, no local ratification is required" and that "there is no merit to appellant's contention that because it is the only metropolitan government in the state, at this time" that these statutes are of local application.

The whole fallacy of appellee's argument is evident from this quotation from the brief of counsel:

> (T)he runoff law is an amendment to a chapter of the Code which deals generally with all counties in the state. The runoff law was not intended to apply to one county alone, but rather applies to all counties in the state which now or hereafter have a mayor as head of the executive or administrative branch.

We reiterate that the run-off law applies solely to Shelby County under the present laws of the State of Tennessee. We cannot conjecture what the law may be in the future. We are not at liberty to speculate upon the future action of the General Assembly.

A similar argument was made in *Board of Education of Memphis City Schools v. Shelby County,* 207 Tenn. 330, 339 S.W.2d 569, wherein the Court said:

> However, it should be noted that the language does not vest in any other county or county school system the privileges purported to be granted Shelby County under its Private Act but reserves to the Legislature the right to grant such privileges by future Private Acts. Under this Act, any authority for school systems to change the apportionment of local school

funds from the manner provided by the general law must yet come from the Legislature by Private Act. In other words, the Legislature has undertaken to authorize a suspension of the general law by Private Act, which cannot be done under the State Constitution. Furthermore, notwithstanding the language of said Public Act, the Legislature could take such action, with reference to the passage of any such Private Act as it might see fit at the time, either passing or rejecting the same. Then, too, there is the matter of the Home Rule Amendment to the Constitution, and any results thereunder would be speculative. The result, therefore, of any such attempted legislation is that there is no absolute assurance given that any other county school system can avail itself of the same privileges attempted to be granted Shelby County under Chapter 711, Private Acts of 1947, as amended. Any privileges purported to be granted other school systems of the State, by the aforesaid disputed sentence of Section 8, sub-sections (1)(c), of Chapter 14, Public Acts of 1959, are contingent, speculative, lacking certainty, and dependent upon future action of the Legislature. 339 S.W.2d at 580.

## IV.

Finally, in an effort to ascertain the legislative intent we have examined the official records of the legislative proceedings on file in the State Library and Archives. Based upon that examination there can be no reasonable dissent from the proposition that the sole purpose of Chapter 354, was to provide a run-off election in Shelby County and Shelby County alone; that this was purely a local issue:[2] and that in reality a general law was used as a device to amend

---

2. It should be noted that among the fifty-one House Sponsors of the proposal (HB 345) were nine members of the Shelby Delegation and that the sponsors of the companion Senate Bill (SB 461) were two Shelby County Senators.

Further indication of the local interest and nature of this enactment is the close division of the legislative delegations from Shelby County on final passage. Seven members of the House voted for passage; seven against, three not voting. In the Senate three Senators voted for, two against and one not voting.

a private act which could not be passed because of a rift in the Shelby County delegation. An extract of these proceedings appears as an appendix to this opinion.

### V.

In summary we hold that Chapter 354 of the Public Acts of 1975 is private and local in effect and application; that it applies to Shelby County alone in its governmental capacity; and because it was not conditioned upon the approval by a two-thirds vote of the Quarterly County Court, or a majority of those voting in an election, as required by Article 11, Section 9 of the Constitution of Tennessee, it is wholly and utterly void.

There will be no run-off election for the office of County Mayor, following the 9 October 1975 election.

The decision of the Chancellor is reversed. The costs will be paid by Shelby County.

FONES, C. J., COOPER and HARBISON, JJ., and HYDER, Special Justice, concur.

### APPENDIX

An extract of the record of proceedings of the House of Representatives on May 12, 1975. (Record No. H–180).

*MR. MOORE OF SHELBY:*

Moved passage of HB 345 in order "that we may have a run-off election in Shelby County".

*MR. KING OF SHELBY:*

(This) is a violation of an agreement that was made between the members of the Shelby County delegation and the 88th General Assembly, the Shelby County Court and all the voters of Memphis & Shelby County, Tennessee. Last year we passed, after quite a bit of debate, a Shelby County Restructure Bill. One of the problems that we had before we brought the bill to you all was that we had never had a run off in Shelby County government nor did this bill provide for a run off in Shelby County government. We passed the bill; it was ratified by a two-thirds vote of our County Court, and then it went to a referendum and all the people in Memphis and Shelby County voted for the bill in its present status. Now there are some members of our delegation who are coming to you and asking you to change that agreement by adopting this bill. I ask that you do not support HB 335.

*MR. MARTIN OF SHELBY:*

Mr. Speaker and members of the House, this is the same piece of legislation that was before you last week. As I stated at that time *this does only one thing* and that is it suggests that Shelby County should choose the chief executive officer of that county by a majority vote—a majority of those participating in the election. Mr. Speaker and members of the House, this is probably been one piece of legislation that has caused a lot of the squabbling in Shelby County that we have tired you with on the floor of the House. Now this vote you are about to cast is something that should end that squabbling for this year; . . . I know that is something you will be thankful for . . .

Thereafter a motion for the previous question was put and prevailed, and after immaterial comments, questions and rulings, the bill was placed upon third and final reading, with the result that it passed by a vote of 54 to 14.

AN EXTRACT OF THE RECORD OF PROCEEDINGS OF THE STATE SENATE ON MAY 22, 1975. (Record No. S–178).

*SENATOR PERSON OF SHELBY:*

This is the bill that provides for a run-off election for the office of County Mayor. At the present time to the best of my knowledge *Shelby County is the only county in this state that has the office of County Mayor* which was created by the restructuring act passed by this body last year . . . . .

*SENATOR FORD OF SHELBY:*

. . . Now this bill here runs contrary to the judgment of the people of Shelby County. They voted on this matter a year or so ago in a referendum knowing full well that the provision for a run-off did not apply. The Shelby County delegation is split on this issue. I believe there are three Senators for, three against, or something like that, but we're split on this. I submit to you this is a Shelby County fight and we should not bloody the body of the Senate in this fight. (At this point, Senator Ford read to the Senate a letter from the Attorney General's office holding that, since it would require legislation for any other county to provide for such form of government, it would raise a serious question as to whether or not it is a private act for the purpose of Article 2, Sec. 9 of the constitution, requiring local ratification).

Ford (continuing): Now I submit that the restructive bill that was passed by the legislature last year, or year before last, whatever, it provided for local ratification before it became law. This particular run-off is a part of that total restructure. It does not provide for local ratification. This is why the Attorney General is a ruling upon this matter. It is unconstitutional, it will be thrown out. I see no reason why this body, in its good and wise judgment, ought to get involved in a fight between the Shelby County delegation or ought to get involved in a fight where there is a question as to the constitutionality of it. And I respectfully submit that this body ought to turn this particular matter down.

Amendment No. 1 was proposed and was seconded by Senator Gillock of Shelby County.

Senator Person then spoke to the amendment and asserted his basic belief in run-off elections. A motion to table was made.

Senator Ford again spoke, reiterating his earlier arguments, particularly commenting in the absence of a ratification clause.

(Record S–179)

Motion to table prevailed.

*SENATOR BAIRD,* commented that this appeared to him to be "a local matter".

*SENATOR WHITE OF SHELBY:* This is a local fight in Shelby County. Let me make it quite clear that this isn't drawn as a general bill, but what it says . . . is that in counties that have a mayor as the head of the executive branch and there are only two—that's Davidson County and Shelby County and Davidson County's mayor already has—they already provide a run-off—so this bill is a general bill drawn to *affect Shelby County only. It's a local bill and a local fight.* Now why isn't it drawn as a private bill? Because they couldn't pass it as a private bill. Why couldn't they? Because we don't have a unit rule in the House—the Shelby County House delegation, because they cannot agree over there. We've got seven black members and eleven white members and they can't agree on a unit rule so the speaker has said any local bill has to have eighteen signatures . . or else it goes to committee. The restructure bill got eighteen house signatures last year, and it only got them because the black members were assured that there would be no run-off provision to it and the run-off was unconstitutional. And I was part of the group that assured them that . . . . There were some members of the House, some Republican members, who demanded a run off, but black members said if you put it in there we won't vote for the bill. The matter was resolved when the black members were informed that a run-off would be unconstitutional . . . .

\*      \*      \*      \*      \*      \*

I'm pleading with you not to get involved in this Shelby County fight and create what will be a rift that I feel will never heal . . . . The black legislators, I think with good cause, think that we have double crossed them now by coming back with a general bill when we couldn't have passed the restructure bill if we had put a run-off in it.

Senator Person's response was aimed at convincing his colleagues of the merit of run-off elections and the duty of all senators, irrespective of their place of residence, to support run-off elections.

*Record S–180*—May 27, 1975

After other amendments were rejected or withdrawn, the Senate set this matter and was placed upon the calendar for May 27, 1975.

On May 27, 1975 the following ensued:

Senator Person moved the passage of this bill on third and final reading.

Senator Ford spoke in opposition, pointing out the absence of any provisions relating to ratification.

Thereafter, the measure passed by vote of 22 to 3.

## OPINION ON PETITION TO REHEAR

The petition to rehear is respectfully denied.

All concur.