CIVIL SERVICE MERIT BOARD OF THE CITY OF KNOXVILLE, Tennessee, Robert D. Madigan, M.D., Chairman, John R. Ruggles, Member, Henry W. Anderson, Sr., Member, Lindsay W. McDonough, Member, Erma G. Greenwood, Member and Wayne Day, Individually and as President of the City Employees League for and in Behalf of Employees of the City of Knoxville, Appellants,

v.

Charles BURSON, Attorney General of the State of Tennessee in his Official Capacity, Victor Ashe, Mayor of the City of Knoxville, Tennessee, in his Official Capacity, and City of Knoxville, Tennessee, Appellees.

Supreme Court of Tennessee, at Jackson.

Sept. 16, 1991.

Wayne R. Kramer, Knoxville, for the Civil Service Merit Bd. and its members.

Timothy A. Priest, Knoxville, for Wayne Day, Individually and as President of the City Employees League.

Charles W. Burson, Atty. Gen. & Reporter, Andy D. Bennett, Deputy Atty. General, Nashville, Thomas A. Varlan, Law Director, City of Knoxville, for appellees.

## OPINION

DAUGHTREY, Justice.

The principal question in this declaratory judgment action is whether legislation passed in 1989 affecting municipal civil service boards in Tennessee's most populous counties violates the home rule provisions of Article XI, Section 9 of the Tennessee Constitution. The plaintiffs also allege that the legislation in question is based upon and utilizes unreasonable classifications, in violation of both the state and federal constitutions. The chancellor found that the statute, T.C.A. § 6-54-114, was constitutional in all respects. We agree and affirm the judgment.

## I. Background

The genesis for local self-government by cities and towns in this state first appeared in Tennessee law in 1835. The state constitution adopted that year gave the General Assembly the discretion "to vest such powers in the courts of justice, with regard to private and local affairs, as may be expedient." Tenn. Const. 1834, Art. XI, § VIII. That same provision was carried over into the Constitution of 1870, but its main implementation was in the creation of county courts to carry on local governance. In Tennessee, as in most other American jurisdictions, the right of municipalities to autonomous self-government has never been considered inherent, but has always been interpreted as a matter of constitutional entitlement or legislative delegation of authority. Laska, *The Tennessee State Constitution*, 151 (1990); McQuillen, *Municipal Corporations* § 1.42 (3d ed. 1987). The possibility of truly independent municipal self-government, free from continuing legislative intervention and control, did not come into existence in this state until the constitution was amended in 1953 to establish the right to home rule.

Under the provisions of Article XI, Section 9, a municipality can opt for home rule by "an affirmative vote by a majority of its qualified voters." It is then authorized to operate under a charter of its choosing and becomes immune to local legislation passed by the General Assembly, which thereafter can "act with respect to such home rule municipality only by laws which are *general in terms and effect.*" *Id.* (emphasis added).

The City of Knoxville, one of the named defendants in this action, adopted home rule in August 1954, shortly after it became available, and began operating under a city charter. In August 1980, the voters of Knoxville approved an amendment to that charter to provide for the creation of the Civil Service Merit Board of the City of Knoxville. Under this amendment, Article X, Section 1003(B) of Knoxville's charter provides as follows:

(1) *Members of the board shall be nominated by the board and shall be confirmed by a majority vote of the council.* In the event there are no board members serving to make the appointments, the mayor shall make appointments to the board which shall be subject to the confirmation by a majority vote of the council. Each member shall be appointed for a term of five (5) years. No member shall serve more than two (2) consecutive terms.

(2) Present members of the board shall serve until the expiration date of their current terms or until their successors are appointed and confirmed by council. In order to facilitate an orderly transition from the present six-year terms to the five-year terms provided for herein, the present terms shall be modified. . . . In the event a vacancy occurs prior to the end of a term, the member appointed to fill the vacancy shall hold under such appointment only for the unexpired term.

(3) A member of the board may be removed only for cause by the unanimous vote of the remaining members of the board. *Members of the board shall be residents of the City of Knoxville, or residents of Knox County, Tennessee, engaged in a business, profession or employment located within the corporate limits of the City of Knoxville.* No person shall be appointed to the board who holds any salaried office or employment in the city government, nor shall any member be eligible for employment to any salaried office or service of the city. No person shall serve on the board who is an officer or member of a committee of any organized political party.

(Emphasis added.)

The plaintiffs in this case include the chairman and current members of the Knoxville civil service board, who were appointed pursuant to the 1980 charter amendment. Their tenure is threatened by the 1989 enactment of T.C.A. § 6–54–114, by which the state legislature proposed to make uniform the qualifications and procedures for the nomination of members serving on the municipal civil service boards in Tennessee's most populous counties. 1989

Pub. Acts, Ch. 463. Under the provisions of T.C.A. § 6–54–114:

(a) Notwithstanding any provision of any municipal charter to the contrary, each member of a municipal civil service board shall be a domiciled resident of the municipality which the board serves for at least one (1) year prior to appointment. During a member's term of office, no such member shall engage in any type of business with the municipality or any employee of such municipality. Upon May 31, 1989, any member engaged in such business shall cease doing such business immediately.

(b) Notwithstanding any provision of any municipal charter or ordinance to the contrary, all members of any municipal civil service board in any county with a population greater than three hundred thousand (300,000), created by ordinance or charter shall be appointed by the mayor of the municipality which the board serves. Such appointments shall be subject to confirmation by the municipal legislative body. At least one (1) member shall be a woman and one (1) member shall be a minority citizen. The provisions of this section shall not apply to municipalities with a mayor-alderman form of government.

In response to this legislation, the plaintiffs filed suit for declaratory judgment, alleging that the statute violates the constitutional guarantee of local control imbedded in the home rule provisions of Article XI, Section 9 of the Tennessee Constitution because, in effect, it applies only to the City of Knoxville. As a result, they contended, the legislation is improperly "local" in nature, rather than "general."

Furthermore, because the statute is applicable only to municipalities located in counties with a population greater than 300,000 and to those not operating under a mayor-aldermanic form of government, the plaintiffs contended that § 6–54–114 constitutes arbitrary class legislation. As such, they argued, the statute violates the provisions of Article XI, Section 8 and Article I, Section 8 of the Tennessee Constitution.

Article XI, Section 8 mandates that "general laws only [are] to be passed" by the Tennessee General Assembly and prohibits the legislature from exercising its power "to suspend any general law for the benefit of any particular individual" or corporation. Article I, Section 8 of the constitution provides that "no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed of his life, liberty or property, but by the judgment of his peers or the law of the land." This language has been interpreted broadly by the Tennessee courts to guarantee not only due process but also equal protection of the law. *See, e.g., City of Memphis v. State ex rel. Ryals,* 133 Tenn. 83, 179 S.W. 631 (1915).

The trial court found no merit to any of the contentions advanced by the plaintiffs. The chancellor ruled that the terms of § 6–54–114 were not local *in form* and that, because the act also applies to the appointment procedures for civil service boards in Shelby and Davidson Counties, as well as to boards of municipalities located in counties that may grow to meet the act's population requirements, the terms of the statute are not local *in effect.*

The chancellor also determined that a reasonable basis existed for the disparate treatment of civil service systems in populous counties and those in less populous counties. Moreover, he held that the statute's one-year residency requirement both had a rational basis and served a compelling state interest.

As a result, the court found that the plaintiffs were unable to sustain their burden of establishing a constitutional violation. The chancellor thus held that the challenged provisions of § 6–54–114 are constitutional. This appeal followed.

## II. *The Home Rule Provisions of Article XI, Section 9 of the State Constitution*

■ In order to strengthen local self-government, the drafters of the 1953 amendment to Article XI, Section 9 provided that "any act of the General Assembly

[which is] private or local in form or effect [and] applicable to a particular county or municipality ... shall be void and of no effect unless the act [receives local approval]." Moreover, once a municipality adopts home rule, the General Assembly cannot pass local legislation affecting it, whether subject to local approval or not, but can "act with respect to such home rule municipality *only* by laws which are general in terms and effect." Tenn. Const. Art. XI, § 9, para. 4 (emphasis added).

 The plaintiffs in this case contend that the provisions of T.C.A. § 6–54–114 are local in form and effect and are thus unconstitutional, because they apply only to the City of Knoxville. The plaintiffs argue that legislation involving municipal civil service boards is "special, local, or private" unless, by its terms, it *necessarily* applies to *every* municipality in the state.

This Court has repeatedly held to the contrary. For example, in *Farris v. Blanton*, 528 S.W.2d 549 (Tenn.1975), we noted that "[t]he whole purpose of the Home Rule Amendment was to vest control of local affairs in local governments." *Id.* at 551. In reviewing the constitutionality of a state statute alleged to be "local" in nature and therefore an impermissible interference with the general purpose of "local control of local affairs,"[1] we further noted in *Farris v. Blanton* that the "sole constitutional test must be whether the legislative enactment, irrespective of its form, is local in effect and application." *Id.* Specifically, the inquiry must be "whether th[e] legislation [in question] was designed to apply to any other county in Tennessee, for if it is *potentially* applicable throughout the state it is not local in effect even though at the time of its passage it might have applied to [only one county]." *Id.* at 552 (emphasis added).

In *Farris v. Blanton*, this Court invalidated an election law that was ostensibly applicable to all counties headed by a mayor and was therefore general in form. We did so because the facts showed that only Shelby County was affected by the statute at the time of passage and that no other county was *potentially* affected by it. Given these circumstances, we reasoned, the legislature must have intended the provision to have a local effect, in violation of Article XI, Section 9. *Id.*

Not every statute that affects a single county will automatically be found to be unconstitutional, however. For example, we have upheld legislation that applied only to counties with a metropolitan form of government, even though Davidson County was at the time the only county in the state with a consolidated, metropolitan form of government. *See Doyle v. Metropolitan Government*, 225 Tenn. 496, 471 S.W.2d 371 (1971); *see also Metropolitan Government of Nashville & Davidson County v. Reynolds*, 512 S.W.2d 6, 9–10 (Tenn.1974) (dictum). Those cases have been successfully distinguished from *Farris v. Blanton* on the ground that enabling provisions for the creation of metropolitan government were extant and potentially available to all counties statewide, whereas the unique form of mayor-county government involved in *Farris v. Blanton* was created by private act, and no similar enabling provisions existed. *Farris v. Blanton*, 528 S.W.2d at 554–555.

Likewise, in *Bozeman v. Barker*, 571 S.W.2d 279 (Tenn.1978), we upheld a statute that was, by its terms, applicable to all counties having a population between 275,000 and 600,000. *Id.* at 280. At the time of its passage, the statute affected only Davidson County and Knox County. But

---

1. *Farris v. Blanton*, like some of the other cases cited as authority in this section of our opinion, concerned the failure of the statute in question to provide for local approval. Under paragraph 2 of Article XI, Section 9, a local act that does not provide for local approval is, as noted above, unconstitutional. Although this question raises a slightly different constitutional issue than that of interference with the internal affairs of a home rule municipality, the core legal question of whether a given law is "local" or "general" is the same in both cases. Thus, we reject the plaintiffs' argument that this Court's ruling in *Bozeman v. Barker*, 571 S.W.2d 279 (Tenn.1978), discussed below, is not controlling because the case did not involve a home rule municipality. The analysis in that case regarding the legal aspects of a general statute is fully applicable here.

we noted that the legislation was "public and general" both in form and effect, because it "applie[d] to two populous counties" at that time and could "become applicable to many other counties depending on subsequent population growth." *Id.* at 282.

The same can be said of the 1989 statute at issue in this case. Under its terms, T.C.A. § 6–54–114 applies generally to municipalities in all counties with a minimum population of 300,000 that do not have a mayor-aldermanic form of government. In its effect, the statute currently applies to municipal civil service boards in the three most populous counties of the state—Shelby County, Davidson County, and Knox County.[2]

Almost identical legislation has withheld constitutional assault in this Court in the past. *See, e.g., Frazer v. Carr,* 210 Tenn. 565, 360 S.W.2d 449 (1962), upholding legislation permitting the formation of metropolitan government in counties with a population over 200,000; at the time, four counties met that cut-off. It is true in this case that because existing civil service commissions in Davidson County and Shelby County are already in compliance with the provisions of T.C.A. § 6–54–114, only the Knoxville board will be required to take affirmative steps to comply with the statute. On the other hand, civil service commissions in the other two counties are certainly *affected* by the statute, because they will have to maintain compliance with § 6–54–114 in the future. Moreover, urban areas in additional counties will eventually become subject to the provisions of § 6–54–114 as county population increases. Finally, there is no indication in the record that the statutory exemption granted to mayor-aldermanic governments makes the act local either in form or in effect.[3]

We therefore hold that T.C.A. § 6–54–114 is not constitutionally invalid under Article XI, Section 9 of the Tennessee Constitution.

### III. The Reasonableness of Classification under Article XI, Section 8 of the State Constitution

■ The plaintiffs further allege that the provisions of T.C.A. § 6–54–114 violate Article XI, Section 8 of the Tennessee Constitution. That section provides:

> The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunitie, [immunities] or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law. No corporation shall be created or its powers increased or diminished by special laws but the General Assembly shall provide by general laws for the organization of all corporations, hereafter created, which laws may, at any time, be altered or repealed and no such alteration or repeal shall interfere with or divest rights which have become vested.

As the courts of Tennessee have long recognized, this constitutional provision does not prohibit the legislature from making distinctions in the law based on classification. *Cavender v. Hewitt,* 145 Tenn. 471, 239 S.W. 767 (1922). It does, however, prohibit classifications that are capricious, unreasonable, or arbitrary, *Martin v. Martin,* 213 Tenn. 345, 373 S.W.2d 609 (1963), whether or not the basis for the classification is apparent on the face of the statute. *Stalcup v. City of Gatlinburg,* 577 S.W.2d 439, 442 (Tenn.1978).

---

**2.** We reject as specious the plaintiffs' argument that § 6–54–114 is actually inapplicable to Davidson County and Shelby County because the civil service regulatory bodies in those two counties are called "commissions" rather than "boards," the term used in the statute. The two terms are obviously synonymous.

**3.** It appears from argument of counsel that such a structure is common to less populous municipalities, small enough that they would not be likely to have a civil service commission despite their location in an otherwise populous county.

■ By their terms and effect, the constitutional provisions apply *only* in situations in which legislation seeks "to suspend any general law," to subject entities "to the burden of certain disabilities, duties, or obligations, not imposed upon the community at large," *The Stratton Claimants v. The Morris Claimants*, 89 Tenn. 497, 522, 15 S.W. 87, 92 (1891), or to grant a privilege not available "to any member of the community, who may be able to bring himself within the provisions of such law." The defendants, the City of Knoxville and its mayor, correctly contend that in order to trigger analysis of a statute under the provisions of Article XI, Section 8, that statute must "contravene some general law which has mandatory statewide application." *Leech v. Wayne County*, 588 S.W.2d 270, 273 (Tenn.1979). They argue further that in order to qualify, the general law of statewide application in question must be a *statute*. Because the plaintiffs allege only that T.C.A. § 6–54–114 contravenes a constitutional provision rather than a statute, the defendants ask us to hold that no "general law" has been violated and Article XI, Section 8 analysis is not implicated. Indeed, the plaintiffs have not been able to direct the Court to any *statute* whose provisions are violated or undermined by T.C.A. § 6–54–114. We therefore conclude that analysis of T.C.A. § 6–54–114 under the provisions of Article XI, Section 8 is not appropriate. *Cf. Frazer v. Carr, supra*, 360 S.W.2d at 452 (statute applicable to all counties with population over 200,000 is itself a "general law," not one "arbitrarily suspending the general law for the benefit of one county" and, thus, it does not violate Article XI, Section 8).

### IV. The Reasonableness of Classification under Article I, Section 8 of the State Constitution

■ If review of the classification created by T.C.A. § 6–54–114 is not appropriate under Article XI, Section 8, it nevertheless remains open under Article I, Section 8, set out fully in Section I of this opinion. As this Court has recognized,

Citizens may be classified under article 1, § 8, of the constitution, when the object of the legislature is to subject them to the burden of certain disabilities, duties, or obligations, not imposed upon the community at large. And citizens may be classified under article 11, § 8, of the constitution, when the object of the legislature is to confer upon them certain rights, privileges, immunities, or exemptions not enjoyed by the community at large.

*The Stratton Claimants v. The Morris Claimants, supra*, 89 Tenn. at 522, 15 S.W. at 92. The core concern expressed in this constitutional provision is that legislative classification, to the extent that it exists, not be unreasonable or unfair. Moreover, the provisions of Article I, Section 8, protect cities and counties as well as individuals. *See, e.g., White v. Davidson County*, 210 Tenn. 456, 464, 360 S.W.2d 15, 19 (1962).

■ Hence, to the extent that the provisions of § 6–54–114 create classifications within the legislation, those classifications must be reasonable. The courts of this state have consistently held that a legislatively-created classification within a statute that is "natural and reasonable is constitutional and valid, but class legislation whose classification is arbitrary and capricious is unconstitutional and invalid." *See, e.g., City of Chattanooga v. Harris*, 223 Tenn. 51, 57, 442 S.W.2d 602, 604 (1969).

As noted above, legislation need not, on its face, contain the reasons for a certain classification. *Stalcup v. City of Gatlinburg, supra*, 577 S.W.2d at 442. "Reasons eminently wise and provident might control the law-making body, which do not appear upon the face of a statute, and for the Courts to strike it down, because not readily perceptible, might well be criticized as an act of judicial usurpation." *Shelby County Civil Service Merit Board v. Lively*, 692 S.W.2d 15, 18 (Tenn.1985), *citing Condon v. Maloney*, 108 Tenn. 82, 96, 65 S.W. 871, 874 (1901). "If any possible reason can be conceived to justify the classification, it will be upheld and deemed reasonable." *Stalcup v. City of Gatlinburg, supra, citing Knoxtenn Theatres v. McCanless*, 177 Tenn. 497, 151 S.W.2d 164 (1941).

Contrary to the plaintiffs' contentions, a legitimate justification can be envisioned for the different treatment of civil service boards in municipalities located within counties with populations greater than 300,000. In fact, this Court has previously found that the mere number and complexity of personnel in more populous areas is sufficient to justify certain statutory classifications. *Shelby County Civil Service Merit Board v. Lively, supra,* 692 S.W.2d at 19.

The plaintiffs argue, however, that the classification made in § 6–54–114 was not between populous and less populous counties but rather among municipalities within those counties, regardless of the size of the municipality. Thus, they argue, municipalities of equal size will be treated differently under the statute based upon their location, resulting in an arbitrary classification.

The mere statement of this argument emphasizes its weakness, however. As the plaintiffs note, the legislature sought to differentiate among municipalities not based upon their populations, but based upon their locations either within or without a populous county. The General Assembly could have rationally believed that populous counties, with their large cities, and even with their smaller municipalities in close proximity to those large cities, would have a greater number of civil service jobs available to citizens in order to effectuate the daily provision of services in such areas. The classification of municipalities in populous counties is thus reasonable, not arbitrary, and not violative of the provisions of Article I, Section 8 of the Tennessee Constitution.

T.C.A. § 6–54–114 also classifies municipalities with civil service boards based upon whether or not the municipalities are governed by a mayor-aldermanic form of government. We conclude that this distinction, too, can be supported as reasonable under § 6–54–114(b). A member of an affected civil service board must be appointed by the mayor and confirmed by "the municipal legislative body." When that local legislative body is aldermanic in form, T.C.A. § 6–1–406(9) makes the mayor a voting member of the "board of mayor and aldermen," thus creating a potential conflict of interest and diluting the separation-of-powers aspect of § 6–54–114. We cannot say that the exemption is arbitrary or unreasonable under such circumstances.

■ Likewise, we conclude that the statute does not violate equal protection simply because it is, by its terms, applicable to civil service boards "created by ordinance or charter," as opposed, say, to those created by private act of the legislature. The provisions of § 6–54–114 are, by definition, intended to make uniform certain practices and procedures of municipal civil service boards across the state. Hence, both subsections of the statute begin with the language "notwithstanding any provision of any municipal charter [or ordinance] to the contrary...." We fail to find that by specifying the purpose and thus the reach of the provision, the legislature has engaged in arbitrary or unreasonable classification under the state constitution.

## V. The Validity of Residency and Representation Requirements under the Fourteenth Amendment to the Federal Constitution

■ The plaintiffs also allege that the statute's one-year residency requirement for appointment to a civil service board violates the equal protection provisions of the Fourteenth Amendment to the United States Constitution. T.C.A. § 6–54–114(a). Fourteenth Amendment jurisprudence has consistently recognized, however, that the amendment protects only *individuals* from violations of constitutional rights. *See, e.g., Hague v. C.I.O.,* 307 U.S. 496, 514, 59 S.Ct. 954, 963, 83 L.Ed. 1423 (1939). Moreover, this Court has affirmed that "[a] municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the Federal Constitution which it may invoke in opposition to the will of its creator." *City of Knoxville v. State ex rel. Hayward,* 175 Tenn. 159, 169, 133 S.W.2d 465, 469 (1939), *quoting Williams v. Mayor and City Council of Baltimore,* 289 U.S. 36, 40, 53 S.Ct. 431, 432, 77 L.Ed. 1015 (1933). The

Civil Service Merit Board of the City of Knoxville, as an administrative board of a municipality, is thus precluded from raising a Fourteenth Amendment claim in this matter.

■ To the extent that the *individual* plaintiffs may advance an equal protection argument in this case, traditional Fourteenth Amendment analysis is applicable. Thus, if a statutory classification interferes with a "fundamental right," or operates to the peculiar disadvantage of a suspect class, it is subject to strict scrutiny. *See, e.g., Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976). In such situations, the legislation will be upheld only if it is necessary to promote a compelling state interest, *Zablocki v. Redhail,* 434 U.S. 374, 388, 98 S.Ct. 673, 682, 54 L.Ed.2d 618 (1978), if the means employed are the least intrusive or restrictive available, and if those means are necessary to achieve the desired end. *Georges v. Carney,* 546 F.Supp. 469, 473 (N.D.Ill.1982), *aff'd* 691 F.2d 297 (7th Cir.1982). If, however, the legislation does not affect fundamental rights or suspect classes, it may be sustained if a rational basis exists for such legislative action. *See, e.g., New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976).

The individual plaintiffs contend that both the right to be considered for appointive office and the right to travel from community to community are affected adversely by durational residency requirements. They also argue that the combination of those rights subjects the statutory residency requirement to strict scrutiny such that the statute may be upheld only if necessary to effectuate a compelling state interest.

The United States Supreme Court has held, however, that there is no fundamental right to run as a candidate for elective public office. *Bullock v. Carter,* 405 U.S. 134, 142–43, 92 S.Ct. 849, 855–56, 31 L.Ed.2d 92 (1972). The equal protection clause does "guarantee the right to be considered for [public] office without the bur-

den of invidious discriminatory disqualifications." *Wellford v. Battaglia,* 485 F.2d 1151, 1152 (3rd Cir.1973), *citing Turner v. Fouche,* 396 U.S. 346, 362, 90 S.Ct. 532, 541, 24 L.Ed.2d 567 (1970). But we find no "invidious discrimination" reflected in the qualifications set out in T.C.A. § 6–54–114. Moreover, if the right to run for office is not considered fundamental, certainly the "right" to be *appointed* to public office should not be held to be a fundamental right. *See Langmeyer v. Idaho,* 104 Idaho 53, 656 P.2d 114, 118 (1982).

Some courts have nevertheless employed a strict scrutiny analysis in examining durational residency requirements to run for public office. In doing so, they have recognized that the residency requirement also infringes on the fundamental right of citizens to vote for the candidates of their choice. *See, e.g., Wellford v. Battaglia, supra.* Such a fundamental right would not obtain in this case, however, because the right to vote is not implicated here.

Furthermore, strict scrutiny is not necessarily applicable in this case merely because the constitutional right to travel is involved. As one federal court has noted:

[I]t has ... been established that durational residency requirements are not *per se* infringements of the right of interstate travel triggering strict scrutiny. *Sosna v. Iowa,* 419 U.S. 393, 406, 95 S.Ct. 553, 560, 42 L.Ed.2d 532 (1975); *Memorial Hospital v. Maricopa Co.,* 415 U.S. 250, 258–59, 94 S.Ct. 1076, 1082, 39 L.Ed.2d 306 (1974); *Matthews v. Atlantic City,* [84 N.J. 153, 417 A.2d 1011, 1019 (1980)]; *Walker v. Yucht,* [352 F.Supp. 85, 94–95 (D.Del.1972)] ... On the other hand, the Supreme Court has held that durational residency restrictions on certain other benefits or privileges *do* sufficiently implicate the right to travel so as to require strict scrutiny: non-emergency medical care for indigents, *Memorial Hospital v. Maricopa Co., supra,* welfare benefits, *Shapiro v. Thompson,* [394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969)], and voting, *Dunn v. Blumstein,* [405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972)].

*Joseph v. City of Birmingham,* 510 F.Supp. 1319, 1332 (E.D.Mich.1981).

Only in situations in which a classification *penalizes* the exercise of the right to travel is the "compelling state interest" analysis applicable. *Memorial Hospital v. Maricopa Co., supra,* 415 U.S. at 258, 94 S.Ct. at 1082; *Dunn v. Blumstein, supra,* 405 U.S. at 340, 92 S.Ct. at 1002; *Beil v. City of Akron,* 660 F.2d 166, 168–69 (6th Cir.1981) (upholding one-year durational residency requirement for candidacy for city council). "Although any durational residence requirement imposes a potential cost on migration, the Court in *Shapiro* cautioned that some 'waiting-period[s] ... may not be penalties.' 394 U.S., at 638 n. 21, 89 S.Ct. at 1333." *Memorial Hospital v. Maricopa Co., supra,* 415 U.S. at 258–59, 94 S.Ct. at 1082. As noted in *Joseph v. City of Birmingham, supra:*

> The crucial inquiry in the Supreme Court's 'penalty' analysis is whether the underlying benefit denied to recently arrived residents is itself a fundamental right (such as voting) or a basic necessity of life (such as welfare benefits for indigents).... If the underlying benefit or privilege does not come within these two currently identified categories, then laws which deny the benefit to recently arrived residents do not 'penalize' the fundamental right of interstate travel; therefore, such laws may be reviewed by the traditional rational basis test.

510 F.Supp. at 1332.

The one-year residency requirement of T.C.A. § 6–54–114(a) does not "penalize" the constitutionally protected right of travel. As with the one-year residency requirement for city commission candidates at issue in *Joseph:*

> [T]he requirement does not impair any underlying fundamental right, such as voting or freedom of speech. Second, candidacy is not a basic necessity of life, the deprivation of which would have 'dire' or 'cruel' effects on recently arrived residents. It is also abundantly clear that the [requirement] could only have a tenuous, remote, and incidental effect on actual interstate travel. Far

from being a real impediment to the exercise of this constitutional right, it is barely imaginable that a person would be deterred from moving to [Knoxville] from another state [or municipality] because he or she would be unable to [be considered for appointment to the Civil Service Merit Board of the City of Knoxville] that year.

510 F.Supp. at 1333 (citations omitted). As a result, strict scrutiny is not required in this matter. It follows that if the residency requirement is rationally related to a legitimate state objective, the legislation should be held to be constitutional. *See also Hankins v. Hawaii,* 639 F.Supp. 1552, 1556 (D.Hawaii 1986); *Langmeyer v. Idaho,* 104 Idaho 53, 656 P.2d 114, 117 (1982).

■ The State of Tennessee has a legitimate interest in ensuring that members of municipal civil service boards are familiar with the problems associated with civil service employment in the area. Moreover, the state is legitimately interested in allowing local legislative bodies which must confirm appointments to civil service boards the opportunity to become familiar with the qualifications and character of individuals nominated for such positions. The one-year residency requirement is rationally related to these legitimate state objectives. In fact, we have previously held that providing the individuals who must select and ratify a public officeholder with an "opportunity to become acquainted with the candidate's ability, character, personality, and reputation" constitutes even a "compelling state interest" that justifies the five-year residency requirement for election to judicial office. *Hatcher v. Bell,* 521 S.W.2d 799, 803–04 (Tenn.1974). We likewise hold that the one-year residency requirement of T.C.A. § 6–54–114 does not violate the equal protection clause of the Fourteenth Amendment to the United States Constitution.

■ In a footnote in their brief, the plaintiffs "also assert that the reservation of one position for a minority and one position for a woman contained in the statute at issue violates the equal protection clause of the United States Constitution." How-

ever, they did not include this allegation in their complaint and have not argued the merits of the issue before this Court. There is no indication in the record that the issue was ever argued before the trial court. It has, therefore, been waived.

Furthermore, even if the plaintiffs had not waived their additional equal protection clause challenge, it is unclear whether they are proper parties to raise such a challenge. In the footnote addressing the issue, the plaintiffs concede that "the Knoxville Civil Service Merit Board already meets the requirement *and expects to continue to meet the requirement in the future.*" (Emphasis added.)

### VI. Conclusion

For the foregoing reasons, we conclude that T.C.A. § 6–54–114 is constitutional and affirm the declaratory judgment entered by the trial court to this effect. Costs will be taxed to the plaintiffs-appellants.

REID, C.J., and DROWOTA, O'BRIEN and ANDERSON, JJ., concur.