Synthia Jo Gaines Benson,      )
                               )      Appeal No.
        Petitioner/Appellee,   )      01-A-01-9601-CV-00043
                               )
v.                             )
                               )
John Thomas Benson, IV,        )      Circuit Court No.
                               )      89D-4274
        Respondent/Appellant.  )

**FILED**

May 31, 1996

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS

MIDDLE SECTION AT NASHVILLE

APPEAL FROM THE FOURTH CIRCUIT COURT OF DAVIDSON COUNTY

AT NASHVILLE, TENNESSEE

THE HONORABLE MURIEL ROBINSON, JUDGE

VICKY V. KLEIN
509 Lentz Drive
Madison, Tennessee 37116-0608
        ATTORNEY FOR RESPONDENT/APPELLANT

JOHN M. L. BROWN
221 Fourth Avenue North
Second Floor
Nashville, Tennessee 37219
PHILIP E. SMITH
213 Third Avenue North
Nashville, Tennessee 37201
        ATTORNEYS FOR PETITIONER/APPELLEE

AFFIRMED, MODIFIED, AND REMANDED

SAMUEL L. LEWIS, JUDGE

OPINION

This is an appeal by respondent/appellant, John Thomas Benson, IV, from a decision of the trial court that awarded petitioner/appellee, Synthia Jo Gaines Benson, $4,299.83 for child support arrearages, $3,946.92 for the college expenses of the parties' son, John Thomas Benson, V, and $750.00 for attorney's fees. The pertinent facts are as follows.

The Fourth Circuit Court of Davidson County entered a final decree of divorce as to the parties on 16 April 1990. The decree incorporated a marital dissolution agreement ("MDA") which provided that Appellant would pay child support of $200.00 every two weeks until the parties' son turned eighteen or graduated with his normal high school class. In addition, the MDA obligated Appellant to pay the son's reasonable college expenses.

On 21 October 1994, Appellee filed a petition for contempt of court and for breach of contract. The claims in the petition concerned three different time periods. The first was April 1990 to January 1994. Appellee claimed that, during this time, Appellant accumulated an arrearage of $3,166.51 as a result of two actions. First, he paid $400.00 per month instead of $200.00 every two weeks resulting in a $33.33 monthly shortfall. Second, he failed to pay any support for four months.

The second period was February 1994 to June 1994. Appellee claimed that Appellant did not pay child support for the five month period and that he owed $2,166.65. During this time, the son was an inpatient at Cumberland Heights. Upon leaving this facility, the son moved into a halfway house in Atlanta, Georgia. Appellant paid $7,577.00 to Cumberland Heights and the halfway

2

house for his son's expenses. Appellant then insisted that he deserved a credit for those payments against his child support obligation.

The third period was the Fall of 1994 to the Winter of 1995. During this time, the son attended Georgia State University. Appellee asserted that Appellant breached the contract when he refused to pay the son's reasonable college expenses. Appellant claimed he did not know his son had enrolled in college. He further noted that during the Fall 1994 and Winter 1995 quarters, the son was enrolled part-time as a pre-freshman and took remedial courses only.

Appellant filed a counter-petition with his answer, but later took a voluntary dismissal. On 23 May 1995, the court entered an order in which it awarded Appellee $2,133.18 for the arrearage accrued from April 1990 through January 1994, $2,166.65 for the arrearage accrued from February 1994 through June 1994, $2,858.26 for the son's tuition and books, and $1,088.66 for the son's room at college. The court also ordered Appellant to pay wife's attorney $750.00 and dismissed the contempt charge.

On 18 August 1995, the court denied Appellant's "motion to alter or amend or for a new trial." The basis of the motion was that the son's courses at Georgia State were remedial and not for credit and that the MDA only required Appellant to pay college expenses. Appellant filed his notice of appeal as to both orders on 15 September 1995. On appeal, Appellant asked this court to address the following issues:

   I.   Whether the father is entitled to a credit against a child support arrearage for his payment of the child's necessary expenses which were not being paid by the custodial parent.
   II.  Whether the father is contractually obligated to pay college tuition, room, and books:
        A.   When the child is not enrolled as a full-time

3

                            student.
            B.    When the child is taking remedial courses and
                  is receiving no college credit therefore.

Appellant has not appealed that portion of the trial court's

order awarding appellee arrearages for April 1990 to January

1994.  We address Appellant's issues as presented.


      Tennessee's courts have held that trial courts may award

parents who are obligated to make child support payments credit

for voluntary payments made on behalf of the children.  The

payments must be for the children's necessaries that the other

parent either failed to provide or refused to provide.  *Hartley*

*v. Thompson*, No. 01-A-01-9502-CV-00044, 1995 WL 296202, at *3

(Tenn. App. 17 May 1995); *Foust v. Foust*, No. 03-A-01-9202-CH-61,

1992 WL 145007, at *1 (Tenn. App. 29 June 1992); *Oliver v.*

*Oczkowicz*, Davidson Law No. 89-396-II, 1990 WL 64534, at *2

(Tenn. App. 18 May 1990).  One objection to this rule is that

allowing credits to parents who have defaulted on their child

support obligations violates Tennessee Code Annotated section 36-

5-101(a)(5).[1]  Despite this objection, the courts have held that

giving parents a credit against their child support arrearages

does not violate this code section.  *Hartley*, 1995 WL 296202, at

---

[1]  That section provided as follows:

      Any order for child support shall be a judgment entitled to be
      enforced as any other judgment of a court of this state and shall
      be entitled to full faith and credit in this state and in any
      other state.  Such judgment shall not be subject to modification
      as to any time period or any amounts due prior to the date that an
      action for modification is filed and notice of the action has been
      mailed to the last known address of the opposing parties.

Tenn. Code Ann. § 36-5-101(a)(5) (1991).  In 1994 the General Assembly amended
this provision by adding language to the end of the section.  The new language
provided:

      If the full amount of child support is not paid by the fifth (5th)
      day of the month following the month in which the ordered support
      is due, the unpaid amount is in arrears and shall become a
      judgment for the unpaid amounts and shall accrue interest from the
      date of the arrearage at the rate set in section 47-14-121.
      Computation of interest shall not be the responsibility of the
      clerk.

1994 Tenn. Pub. Acts ch. 987 §4.  The General Assembly amended this section
again in 1995.  1995 Tenn. Pub. Acts ch. 504 §2.

                                    4

*3; **Netherton v. Netherton**, No. 01-A-01-9208-PB00323, 1993 WL 49556, at *2 (Tenn. App. 26 Feb. 1993); **Sutton v. Sutton**, No. 180, 1991 WL 16234, at * 1 (Tenn. App. 12 Feb. 1991). Specifically, this court has acknowledged that the statute prohibits retroactive modifications of child support payments. As for credits, however, this court has held that they are not modifications. Instead, the credit recognizes that the obligor parent provided the support the court ordered in the first place. **Netherton**, 1993 WL 49556, at *2.

Applying these rules to the present case, it is clear that Appellant is entitled to a credit. Appellee did not provide for the son's food or shelter while the son was at Cumberland Heights and the halfway house.[2] Instead, Appellant paid for both of these necessities when he paid the Cumberland Heights' and the halfway house's bills. We acknowledge that Appellee also provided necessaries for the son, but the rule does not require that the obligee parent fail or refuse to provide all of the child's necessaries.

The more difficult issue in this case is the determination of the amount of the credit. Appellant argued that, because Appellee spends over $400.00 a month on food and shelter, he should receive a credit for the full $400.00, that is, his entire child support obligation for that time period. It is this court's opinion, however, that it is better to allow a credit for the actual amount spent up to the amount of the child support payment. **See id.** at *3 (remanding the case for the trial court to determine the amount of support provided by the obligor parent). If that amount is incalculable, then evidence of

---

[2] There is no evidence that Appellee paid rent or a mortgage payment. Thus, the term shelter refers to that portion of the utilities attributable to the son.

5

typical expenses would be relevant to the determination of the credit amount.

While there is some evidence in the record of the son's food expenses, there is little evidence with regard to the cost of the son's shelter. Appellee testified that she spent between $80.00 and $100.00 per week on the son's food. There was evidence of Appellee's utility bills during the period that the son was in Atlanta, but there is no evidence of Appellee's utility bills when the son lived in the home. Further, it is impossible to tell from the evidence how much Appellant actually spent on the son's food and shelter. Because we are unable to determine the appropriate amount of the credit from the record before us, we remand to the trial court for that purpose. TENN. CODE ANN. § 27-3-128 (1980); *see Hartley*, 1995 WL 296202, at *3. The parties shall provide the trial court with evidence of the son's typical monthly food and shelter expenses while living with Appellee and while staying at the Atlanta facilities. Thereafter, the trial court shall determine the amount actually expended by Appellant. If this is impossible, the court may determine the credit amount based on evidence of the son's typical monthly food and shelter expenses while living with Appellee.[3]

Appellant's second issue involves the language of the MDA. To explain, Appellant acknowledged that the MDA obligated him to pay any reasonable college expenses including tuition, books, and room. He also conceded that the language is not ambiguous and that this court should interpret it according to its ordinary meaning. Appellant, however, disagreed with Appellee's

---

[3] During oral argument, Appellee argued that the MDA obligated Appellant to pay for Cumberland Heights and the halfway house because it required Appellant to pay for all medical expenses not covered by insurance. Nevertheless, Appellee did not raise this argument below or develop the record as to whether the care given at the Atlanta facilities was medical care. Thus, we do not address this issue. *Civil Serv. Merit Bd. v. Burson*, 816 S.W.2d 725, 734-35 (Tenn. 1991).

6

contention that the phrase "reasonable college expenses" included the cost of remedial courses and part-time attendance.

Courts should construe the language of an MDA in the light of its plain, ordinary, and popular meaning. *Duvier v. Duvier*, No. 01-A-01-9311-CH-00506, 1995 WL 422465, at *3 (Tenn. App. 19 July 1995)(citing *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975)). It is the opinion of this court that the ordinary and popular meaning of the phrase does include the courses taken by the parties' son. The son was enrolled in Georgia State University. The University assigned him a student number and maintained a transcript of his progress. Further, although the courses were remedial and not applicable to curriculum or degree requirements, they were recognized and factored into the student's grade point average. Finally, the University required the son to take these courses before the son could obtain his bachelor's degree. For the above stated reasons, the costs associated with the son taking these courses are reasonable college expenses.

Appellant also argued that he was not responsible for the expenses because the son was not a full-time student. Appellant claimed that full-time status was a prerequisite to his contractual obligation. In support of his argument, Appellant cited an unreported case from the western section, *Wright v. Wright*, C. A. No. 146, 1988 WL 99987 (Tenn. App. 30 Sept. 1988). This case, however, does not support Appellant's proposition. In *Wright*, the court held that the evidence preponderated in favor of the trial court's finding that the daughter had made a reasonable effort to attain her education. *Id.* at *2. Although the appellate court noted that the trial court mentioned the full-time status of the child, no where did it state that full-

7

time attendance was a prerequisite to the father's obligation. *Id.* Moreover, there is no evidence in the record before this court that the son failed to make reasonable efforts at obtaining his degree. The son's transcript reveals that he has a 2.82 grade point average and that he enrolled in a non-remedial course in the Spring 1995 quarter. Appellant's second issue is without merit.

For the foregoing reasons, the decision of the trial court is reversed as to the denial of a credit and remanded. On remand, the trial court shall determine the amount of the credit owed to respondent/appellant, John Thomas Benson, IV, in accordance with this opinion. The trial court's decision awarding reasonable college expenses to petitioner/appellee, Synthia Jo Gaines Benson, is affirmed. Costs on appeal are taxed one-half to respondent/appellant, John Thomas Benson, IV, and one-half to petitioner/appellee, Synthia Jo Gaines Benson.

_____
SAMUEL L. LEWIS, JUDGE

CONCUR:

_____
BEN H. CANTRELL, J.

_____
WILLIAM C. KOCH, JR., J.