IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 16, 2011 Session

# IN RE Landon H.[1]

**Appeal from the Circuit Court for Davidson County**
**No. 07A64      Phillip E. Smith, Judge**

---

**No. M2011-00737-COA-R3-PT - Filed January 11, 2012**

---

The trial court terminated Father's parental rights on the ground that Father abandoned the child by engaging in conduct exhibiting a wanton disregard for the child's welfare. Father appeals, contending that the pleadings did not allege abandonment by wanton disregard as a ground upon which termination was sought; Father also asserts that the trial court erred in denying his counter-petition for custody. Because we have concluded that the petitioners failed to plead abandonment by wanton disregard as a ground for termination, we vacate the termination of Father's parental rights on that ground and remand for consideration of whether Father's parental rights should be terminated based on a ground alleged in the petition or supplemental petition; we affirm the trial court's denial of Father's counter-petition for custody.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated in Part, Affirmed in Part, and Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P. J., M. S., and FRANK G. CLEMENT, JR., J., joined.

Stephen Mills, Nashville, Tennessee, for the Appellant, Christopher H.

Gregory D. Smith and Rebecca K. McKelvey, Nashville, Tennessee, for the Appellee, Mark B. and Krissa B.

Stephanie Edwards, Nashville, Tennessee, Guardian Ad Litem.

---

[1] This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

**OPINION**

**I. Facts and Procedural History**

Landon H. ("Landon"), the biological child of Cynthia Palmer B. ("Palmer") and Christopher H. ("Chris") was born eight weeks premature on April 5, 2006. Medical proof at trial was that Landon suffered a brain bleed, anemia, and a heart murmur resulting from Palmer's addiction to narcotics at the time she gave birth, her lack of prenatal care, and use of tobacco during her pregnancy.[2] Landon was hospitalized and on methadone treatment for the first three weeks of his life. When Landon was approximately five days old, Palmer's conservator,[3] notified Palmer's half-brother, Marc B., and his wife, Krissa B. ("the Bs"), of Landon's birth and asked whether they would be willing to assume the role of Landon's legal guardians. The Bs agreed, and upon his release from Vanderbilt Children's Hospital, Landon moved into the Bs' home.

The Bs filed a petition seeking custody of Landon which was heard by the Davidson County Juvenile Court on November 1, 2006. The court entered an Order of Adjudication and Disposition on November 6, 2006, finding Landon was a dependent and neglected child. The court noted that "[m]other does not contest placement of the minor child with the [Bs]" and that "[a]t the time of the filing of the Petition, the putative father of the minor child, [Chris], was incarcerated in the federal system. . . . [Chris] has filed a petition for parentage, which is currently pending before the Court." The court found that the Bs are "fit and proper custodians for the minor child" and that "it is in the best interests of the minor child that he be placed in the sole care and custody of [the Bs]." The Bs provided support and care for Landon and incurred substantial expenses related to child care, medical bills, and other costs incidental to a growing child with special needs since that time.

At the time of Landon's birth, Chris was incarcerated in federal prison on a drug conviction. On October 6, 2006, Chris filed a petition in Davidson County Juvenile Court seeking to establish his paternity of Landon and to be granted custody of him. On November 17, 2006, the court entered an Order establishing Chris as the biological and legal father of Landon. Chris was released from prison in March 2007.

---

[2] Palmer tested positive for hepatitis C while in the hospital for Landon's birth.

[3] A conservatorship proceeding had been initiated for Palmer due in part to her history of drug addiction and access to a trust fund.

2

The issues presently before this Court arose from the Bs' filing of a Verified Petition for Adoption in the circuit court on May 16, 2007. As grounds for termination of Chris' parental rights, the petition alleged as follows:

20. [Chris'] history of drug use and convictions for drug-related incidents is grounds for termination of his parental rights.

21. It is appropriate to terminate [Chris'] parental rights with regard to Landon on the following grounds:

a)  The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months;

b)  The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parents still persist;

c)  There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parents in the near future; and

d)  The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home . . .

Chris answered and denied that grounds existed to terminate his parental rights; in a counter-petition, he asserted that he was entitled to custody of Landon under the "superior rights doctrine." The Bs answered the counter-petition and averred that "[Chirs'] personal drug use and his engagement in the drug trade" constituted "substantial harm that allows a court to deprive a natural parent of custody of a child" and that "it is contrary to the best interest of the child to permit [Chris] to exercise regular overnight visitation" with Landon.

On May 27, 2008, the Bs filed a Motion to Amend Petition to Terminate Parental Rights in which they requested that the following be added as a ground for termination:

1.  The father, [Chris], has willfully failed to support the child,[Landon], for a period of four (4) consecutive months immediately preceding the filing of this Amended Petition. [Chris'] failure to provide such support is grounds for

3

termination of his parental rights pursuant to T.C.A. 36-1-101, et. seq.

2.     The father, [Chris] has failed, without good cause or excuse, to make reasonable and consistent payments for the support of the child in accordance with the child support guidelines promulgated by the Department of Human Services, as set forth in T.C.A. 36-1-113(c)(9)(A)(ii).

It does not appear that the motion was ruled upon until August 26, 2009, when the trial court entered an Order on the joint motion of the parties to set the case for trial holding in part:

The Court found that no Amended Petition has been filed by Plaintiffs despite there having been filed and heard Plaintiff's Motion to Amend Petition which had been granted. The Court further found that Plaintiffs, at this time, waive their right to file an Amended Petition pursuant to the facts within their Motion to Amend Petition, so that a final hearing date can be set.

The case was set to be tried on November 16, 2010. On November 12, 2010, the Bs filed a pretrial brief and asserted that Chris' "abandonment" of Landon, as defined at Tenn. Code Ann. § 36-1-102(1)(A)(i), was an additional ground to terminate Chris' parental rights. Specifically, the Bs argued that "despite [Chris'] ability to pay and the presumption that he understands he has an obligation to pay as the legal parent of this child, he has failed to do so, and this set of facts show that his parental rights should be terminated." Chris countered in his pretrial brief, *inter alia*, that abandonment could not serve as a basis for the termination of his parental rights because it had not been pled in the original petition.

On November 16, prior to commencement of trial, the parties presented argument regarding Chris' alleged lack of notice of abandonment as a ground for termination. The trial was continued and, in an order entered November 24 setting forth the rulings at the November 16 hearing, the court stated "the final hearing shall be, and is hereby, continued to permit [the Bs] to file a Supplemental Petition to Terminate Parental Rights, and specifically with regard to supplementing the allegations contained in Paragraph 19 of the Original petition." The court further found that the original Petition "provides sufficient notice to the Defendants of all the grounds for termination of parental rights being pleaded by [the Bs] against [Palmer] and [Chris] individually." On November 17, 2010, the Bs filed a supplemental petition.

The case proceeded to trial on December 8, 10, and 18, 2010. The proof included testimony from Chris, the Bs, an investigative detective, police officer, an expert in child and family therapy, and Landon's pediatrician. Landon was represented by a guardian ad litem. On March 4, 2011, the court entered a forty-five page Memorandum and Order in which it

4

denied Chris' counter-petition, held "that both [Chris] and [Palmer] have abandoned this minor child" and that termination of parental rights was appropriate pursuant to Tenn. Code Ann. § 36-1-113(g) and in Landon's best interest, and terminated the rights of both parents. With regard to Chris, the trial court specifically found that he had exhibited "wanton disregard" within the meaning of Tenn. Code Ann. § 36-1-102(1)(A)(iv). The court further stated that, in light of its finding of the ground of abandonment for termination of parental rights, it made no finding as to persistence of conditions. On March 25, 2011, the court entered a Final Order of Adoption, establishing the "relationship of parent and child" between Landon and the Bs. Chris has appealed challenging the termination of his parental rights.[4]

## II. Analysis

Parental termination proceedings are governed by statute in Tennessee. *See* Tenn. Code Ann. § 36-1-113. A party seeking to terminate the parental rights of a biological parent must prove at least one of the statutory grounds for termination by clear and convincing evidence.[5] Tenn. Code Ann. § 36-1-113(c)(1); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). Secondly, the party must prove, by clear and convincing evidence, that termination of the parental rights of the biological parent is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2).

This Court never takes the issue of terminating parental rights lightly, due to the grave consequences that accompany such decisions. *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky*, 455 U.S. 745, 787 (1982) (Rehnquist, J., dissenting)) ("[f]ew consequences of judicial action are so grave as the severance of natural family ties."). Proceedings to terminate parental rights implicate federal and state constitutional concerns and have the effect of "severing forever all legal rights and obligations" between parent and child. *See Santosky v. Kramer*, 455 U.S. at 753 ("[F]reedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment."). In accordance with Tenn. R. App. P. 13(d), this Court reviews the trial court's findings of fact *de novo* with a presumption of correctness unless the evidence preponderates otherwise. In cases of parental termination, we determine whether the facts, either as found by the trial court, or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *See Jones v. Garrett*, 92

---

[4] Palmer did not contest the termination of her parental rights and is not a party to this appeal.

[5] Because of the fundamental rights involved and the harsh effect of terminating one's parental rights, courts require a higher standard of proof in deciding termination cases. *Matter of M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

S.W.3d 835, 838 (Tenn. 2002); *In re Tiffany B.*, 228 S.W.3d 148, 156 (Tenn. Ct. App. 2007). Whether a ground for termination has been proven by clear and convincing evidence is a question of law, which we review *de novo*, with no presumption of correctness. *In re S.H.*, No. M2007-01718-COA-R3-PT, 2008 WL 1901118, at *4 (Tenn. Ct. App. Apr. 30, 2008) (citing *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007); *In re Valentine*, 79 S.W.3d at 548).

### A. Abandonment by Wanton Disregard

Chris contends that the trial court erred when it terminated his parental rights on the ground of abandonment by wanton disregard because this ground was not pled in the original or supplemental petitions to terminate, and thus he had inadequate notice of the ground.

As we have previously opined, courts must "strictly apply the procedural requirements in cases involving the termination of parental rights." *Weidman v. Chambers*, No. M2007-02106-COA-R3-PT, 2008 WL 2331037, at *6 (Tenn. Ct. App. June 3, 2008) (citing *In re W.B. IV.*, No. M2004-00999-COA-R3-PT, 2005 WL 1021618, at *10 (Tenn. Ct. App. Apr. 29, 2005); *In re M.J.B.*, 140 S.W.3d 643, 651 (Tenn. Ct. App. 2004)). Providing notice of the issues to be tried is considered a fundamental component of due process. *In re W.B. IV.*, 2005 WL 1021618, at *13 (citations omitted). The pleadings limit the ruling to the grounds of termination alleged, "because to find otherwise would place the parent at a disadvantage in preparing a defense." *See id.* at *10 (reversing a trial court's order terminating parental rights on grounds not alleged in the complaint); *see also In re M.J.B.*, 140 S.W.3d at 651 (holding that courts must take a very strict view of procedural omissions that could put a parent at a disadvantage in preparing for trial). Thus, a trial court cannot terminate parental rights based on a ground that is not alleged in the complaint. *In re Tristyn K.*, No. E2010-00109-COA-R3-PT, 2010 WL 2867179, at *5 (Tenn. Ct. App. July 22, 2010) (citations omitted). In considering the issues in this appeal, therefore, we compare the grounds for termination as alleged in the original and supplemental petitions with the basis upon which the court terminated Chris' parental rights.

The first petition, filed on May 16, 2007, was the Verified Petition for Adoption, which alleged that Chris' parental rights should be terminated on the ground of persistence of conditions pursuant to Tenn. Code Ann. § 36-1-113(g)(3) and further stated that Chris' "history of drug use and convictions for drug-related incidents is grounds for termination of his parental rights." The original petition also included the following language in paragraph 19: "Due to his own conduct and preferences, [Chris] has had virtually no relationship with Landon to date. He has provided only token financial support for Landon since Landon's birth. He has paid $1,150 total." On November 17, 2010, the Bs filed a Supplemental

6

Petition to Terminate Parental Rights, specifically supplementing the allegations in paragraph 19 of the original petition by stating:

> 1. The father, [Chris], has willfully failed to support the child, [Landon], for a period of four (4) consecutive months immediately preceding the filing of this Amended Petition. [Chris'] failure to provide such support is grounds for termination of his parental rights pursuant to T.C.A. 36-1-101, et. seq.
>
> 2. The father, [Chris] has failed, without good cause or excuse, to make reasonable and consistent payments for the support of the child in accordance with the child support guidelines promulgated by the Department of Human Services, as set forth in T.C.A. 36-1-113(c)(9)(A)(ii).

The trial court held that Chris' parental rights should be terminated on the grounds of abandonment by wanton disregard for Landon's welfare as defined by Tenn. Code Ann. § 36-1-102(1)(A)(iv).[6] The court cited Chris' drug usage and his continuing to provide drugs to Palmer while he knew or should have known that she was pregnant as the factual basis for the finding of wanton conduct. To address Chris' assertion that abandonment had not been specifically pled and his concerns regarding lack of notice, the trial court stated in its Memorandum and Order:

> The original petition filed by [the Bs] asserted, from this Court's perspective, two grounds for termination of parental rights against [Palmer and Chris].

---

[6] The entirety of Tenn. Code Ann. § 36-1-102(1)(A)(iv) reads as follows:

(1)(A) For purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, "abandonment" means that:
 . . .

(iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child . . .

The two grounds against [Chris] are abandonment and what is commonly referred to as "persistence of conditions." In the original complaint, [the Bs] set forth the following:

> 19. Due to his own conduct and preferences, [Chris] has had virtually no relationship with Landon to date. He has provided only token support for Landon since Landon's birth. He has paid $1150.00 total.

While the applicable code section is not set forth in this section, the Court views this language as sufficient to put Chris on notice that the basis for termination relied on by the [Bs] is "abandonment" within the meaning of T.C.A. § 36-1-102(1).

[Chris] questioned whether he was put on sufficient notice as to [the Bs'] claim of abandonment on his part. The Court, over the objection of [Chris'] counsel, continued the matter until December 7, 2010 and allowed [the Bs] to file a supplemental petition regarding their claim that [Chris] had abandoned Landon. The Court did this out of an abundance of caution to prevent [Chris] from claiming lack of notice regarding the abandonment claim. The supplemental petition was filed the next day, November 17, 2010. The supplemental petition contained allegations that for a period of four (4) months [Chris] failed to pay support other than token support.

We have carefully reviewed these petitions and respectfully disagree with the trial court that the pleadings put Chris on notice that his parental rights were sought to be terminated on grounds of abandonment by wanton disregard of Landon's welfare. Paragraph 21 of the first petition tracks the language at Tenn. Code Ann. § 36-1-113(g)(3), specifically alleging persistence of conditions as the ground upon which termination was sought. The language in the supplemental petition, quoted above, specifically notes the four months preceding the filing of the supplemental petition as the time at issue and tracks the language at Tenn. Code Ann. § 36-1-102(1)(A)(i).[7] Neither petition specifically alleges the statutory

---

[7] Tenn. Code Ann. § 36-1-102(1)(A)(i) states as follows:

For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child . . .

8

ground of abandonment[8] or gives Chris the requisite notice that his conduct prior to Landon's birth and preceding his incarceration[9] was alleged to constitute abandonment by wanton disregard and would be the basis upon which his parental rights were to be terminated. The language quoted by the court from paragraph 19 of the original petition, as well as the allegations of the supplemental petition, relate to Chris' actions after Landon's birth; however, the trial court ultimately held that it was Chris' actions prior to his incarceration, and prior to Landon's birth, that constituted a wanton disregard for Landon's welfare.

In *Weidman v. Chambers*, No. M2007-02106-COA-R3-PT, 2008 WL 2331037, (Tenn. Ct. App. June 3, 2008), we reiterated that courts must strictly comply with procedural requirements in termination of parental rights cases and determined that a petition alleging that a mother willfully failed to visit and support her children during the four months preceding the filing of the petition was insufficient to give notice that the four-month period prior to mother's incarceration would be used to find abandonment as defined in Tenn. Code Ann. § 36-1-102(1)(A)(iv). *Weidman*, 2008 WL 2331037 at *6. Applying the same rationale to the case at bar, we find that the original petition, alleging persistence of conditions, as well as the supplemental petition, referencing failure to support in the four months prior to the filing of the supplemental petition, are insufficient to provide notice that termination of Chris' parental rights was being sought on the basis of abandonment by wanton disregard.

We next consider whether abandonment by wanton disregard as a ground for termination of Chris' parental rights was tried by implied consent of the parties. The Bs assert that "almost the entirety" of their case was based on wanton disregard and persistence of conditions. Chris contends that the supplemental petition alleged "a wilful failure to support" and that there was no pleading or mention at trial that abandonment by wanton disregard was being considered as the ground of termination.

Our review of the record leads us to conclude that abandonment by wanton disregard as a ground for termination was not tried by implied consent. The fact that Chris participated in discovery relative to his knowledge and actions prior to his incarceration or that his counsel participated in the examination of witnesses at trial in that regard does not necessarily indicate that he was consenting to try the case on the ground of abandonment by

---

[8] Tenn. Code Ann. § 36-1-113(g)(1) provides the basis for termination of parental rights on the ground of abandonment and incorporates the definition of abandonment found at Tenn. Code Ann. § 36-1-102(1)(A).

[9] Chris was incarcerated from December 2005 until March 2007. Landon was born, eight weeks premature, on April 5, 2006. Thus, Palmer was approximately three months pregnant with Landon when Chris was incarcerated. The Bs filed the petition to terminate on May 16, 2007.

9

wanton disregard, particularly where that ground had not been specifically pled. Some of the testimony related to occurrences prior to Chris' incarceration, including the testimony regarding whether he knew of Palmer's pregnancy, was relevant to the best interest inquiry.

Because Chris was not given due notice of the ground upon which termination of his parental rights was based, we vacate the trial court's termination on the ground of abandonment by wanton disregard and remand for further consideration as hereinafter set forth. *See In re W.B. IV.*, 2005 WL 1021618, at *13 (Tenn. Ct. App. Apr. 29, 2005) (holding that the parties did not consent to try a separate ground for termination not alleged in the pleadings).[10]

## B. Abandonment by Failure to Support

The Bs contend that the trial court terminated Chris' parental rights based on a finding that he abandoned Landon by failure to support within the meaning of Tenn. Code Ann. § 36-1-102(1)(A)(i). We have reviewed the trial court's Memorandum and Order and, while the court references Tenn. Code Ann. § 36-1-102(1)(A)(i) as being applicable to Chris, the court did not make specific findings in that regard or cite the statute as the basis of the determination that Chris abandoned Landon. In contrast, the court explicitly made findings regarding Chris' wanton disregard of Landon's welfare and specifically terminated his rights based on the definition of abandonment at Tenn. Code Ann. § 36-1-102(1)(A)(iv). Because of the lack of findings and clarity, we decline to affirm the termination of Chris' parental rights on the ground of abandonment by failure to support.

## C. Persistence of Conditions

Although the original petition asserted persistence of conditions as a ground for termination of Chris' parental rights, the trial court declined to address persistence of conditions in its ruling.[11] On appeal, the guardian ad litem asserts that the evidence of record is sufficient to sustain the termination of Chris' parental rights on the ground of persistence of conditions and suggests that this court has the authority to affirm the termination of Chris' rights on such ground. We respectfully decline to do so. It is the role of the trial court to

---

[10] Our conclusion that Chris was not given the proper notice regarding abandonment by wanton disregard pretermits our consideration of whether abandonment by wanton disregard was proven by clear and convincing evidence.

[11] While only one ground need be found to terminate a parent's rights, our Supreme Court has instructed trial courts to include in its final order findings of fact and conclusions of law with respect to each ground presented. *See In re D.L.B.* 118 S.W.3d 360, 367 (Tenn. 2003).

10

address, in the first instance, whether a ground for termination of parental rights is shown by the evidence and to make findings in that regard.[12]

### D. Chris' Counter-Petition for Custody

Chris contends that the trial court erred in denying his counter-petition for custody and argues that his rights, as the natural father of Landon, are superior to the Bs. The leading case discussing the ability of a natural parent to invoke the doctrine of superior rights to modify a valid custody order is *Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2007), in which a father had voluntarily relinquished custody of his child to the maternal grandmother and subsequently sought to regain custody by invoking the superior rights doctrine.[13] The The *Blair* Court held that father could not invoke the doctrine under the circumstances presented, stating:

> a natural parent is not generally entitled to invoke the doctrine of superior rights to modify a valid custody order awarding custody to a non-parent. Instead, in the absence of extraordinary circumstances—for instance, the natural parent was not afforded an opportunity to assert superior parental rights in the initial custody proceeding; the custody order is invalid on its face; the order is the result of fraud or procedural illegality; or the order grants only temporary custody to the non-parents—a trial court should apply the standard typically applied in parent-vs-parent modification cases: that a material change in circumstances has occurred, which makes a change in custody in the child's best interests.

---

[12] *See In re Adoption of Muir,* 2003 WL 22794524 (Tenn. Ct. App. Nov. 25, 2003) ( "When a trial court has not complied with Tenn.Code Ann. § 36-1-113(k), we cannot simply review the record de novo and determine for ourselves where the preponderance of the evidence lies as we would in other civil, non-jury cases. [citation omitted]. In accordance with *In re D.L.B.,* 118 S.W.3d at ----, 2003 WL 22383609, at *6, we must remand the case for the preparation of appropriate written findings of fact and conclusions of law.")

[13] The Supreme Court noted that Article I, section 8 of the Tennessee Constitution requires courts, in deciding initial custody disputes, to give the natural parents a presumption of "superior parental rights" which recognizes that "parental rights are superior to the rights of others and continue without interruption unless a biological parent consents to relinquish them, abandons his or her child, or forfeits his or her parental rights by some conduct that substantially harms the child." *Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2007) (citing *In Re Askew,* 993 S.W.2d 1 (Tenn. 1999) and *O'Daniel v. Messier,* 905 S.W.2d 182, 186 (Tenn. Ct. App. 1995)).

*Id.* at 148. Consistent with the instruction of *Blair*, we initially consider whether the "extraordinary circumstances" alluded to therein are present in this case, such as to allow Chris to assert the superior rights doctrine.

I. *Validity of the November 6, 2006 Juvenile Court Order*

Chris asserts that the juvenile court's November 6, 2006 Order finding Landon dependent and neglected and placing Landon with the Bs was not entered in accordance with Tenn. R. Civ. P. 58,[14] and as a consequence is "ineffective as the basis for any action for which final judgment is a condition precedent," is temporary, and "invalid on its face." The trial court held that the order was "valid on its face and there is no language referencing temporary placement with [the Bs]," and found as follows:

> On November 1, 2006, the Juvenile Court of Davidson County was scheduled to conduct an adjudicatory and dispositional hearing on the dependent-neglect petition filed by [the Bs]. Apparently all involved reached an agreement and that agreement was announced to Magistrate Carlton Lewis who then adopted the agreement as the order of the court. . . . The Court, in looking to the order of adjudication and disposition, must recognize that [Chris] had notice of the proceeding by the presence of his attorney, Martha Child. The Court also must recognize that [Chris] was properly before the Court by his petition for parentage. The Court also recognizes that the order explicitly removed custody from [Palmer] and implicitly removed custody from [Chris] because of his incarceration. The Court recognizes that the order is valid on its face and there is no language referencing temporary placement with [the Bs].

The record shows that Chris was represented by counsel and that his mother was present at the November 1, 2006 hearing, which also included a hearing on Chris' petition to legitimate Landon and for custody of him. While the order was not signed by Chris' counsel, there is no evidence that it was not agreed upon by all parties present at the hearing, as found by the trial court. Chris had the opportunity, through counsel, to assert his parental rights in that proceeding. To the extent he took issue with the placement of Landon with the Bs, he had the opportunity to appeal the placement to the circuit court.

---

[14] Chris' contention that the November 2006 Order is invalid because it was not entered in accordance with Tenn. R. Civ. P. 58 was not raised in either the juvenile court or the circuit court; as a consequence, he has waived the argument on appeal. *See Schneider v. City of Jackson*, 226 S.W.3d 332, 342 (Tenn. 2007) (citing *Dye v. Witco* Corp., 216 S.W.3d 317, 322 (Tenn. 2007); *Civil Serv. Merit Bd. of City of Knoxville v. Burson*, 816 S.W.2d 725, 735 (Tenn. 1991)); *see also* Tenn. R. App. P. 36(a).

Chris contends that "it is obvious that the [November 6] order was intended to be temporary" because the November 17 order reserved "all other matters" in his custody petition. We have reviewed the November 17, 2006 order establishing Chris as the biological and legal father of Landon and do not find any inconsistency or conflict between it and the order entered November 6 finding Landon to be dependent and neglected and placing custody of him with the Bs. The record is clear that on November 1, 2006, Landon was dependent and neglected within the meaning of Tenn. Code Ann. § 37-1-102(b)(12) and that the Bs, having raised him since his birth, were fit and proper custodians of him. Further, we find nothing in the November 17 order that makes the award of custody to the Bs temporary or otherwise invalidates the placement.

We agree with the trial court that the custody disposition in the November 6 order was not temporary, invalid, or fraudulent; the trial court correctly held that the superior rights doctrine could not be asserted by Chris.

## II. *Material Change of Circumstance*

The trial court addressed whether there had been a material change in circumstances making a change in custody in Landon's best interest. Under Tennessee statutes, a parent seeking to modify an existing custody order must "prove by a preponderance of the evidence a material change in circumstance." Tenn. Code Ann. § 36-6-101(a)(2)(B); *see also Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002). When determining whether there has been a change of circumstance sufficient to justify a change in custody, the Tennessee Supreme Court has directed courts to consider whether: "1) the change occurred after the entry of the order sought to be modified, 2) the changed circumstances were not reasonably anticipated when the underlying decree was entered, and 3) the change is one that affects the child's well-being in a meaningful way." *Cosner v. Cosner*, No. E2007-02031-COA-R3-CV, 2008 WL 3892024, at *4 (Tenn. Ct. App. Aug. 22, 2008) (citations omitted). If the court finds a material change in circumstances exists, then the court must determine "whether the modification is in the child's best interests." *Kendrick*, 90 S.W.3d at 570.

The court held that Chris did not show a material change in circumstance and stated as follows in the Memorandum and Order:

> The proof established that Landon has developed a relationship with [Chris]. The proof has also established that at the time of the Order of Adjudication and Disposition [Chris] was incarcerated. The proof also overwhelmingly established that [Chris] has done virtually nothing to educate himself as to Landon's health problems. [Chris] has not participated in Landon's necessary medical care. [Chris] has paid none of the medical

13

expenses of Landon. He has failed miserably to participate in Landon's speech therapy or to assist the Bs in the cost of the therapy. [Chris] refused to cooperate with Dr. Janice Berryman. He has failed even to review Landon's medical records except for the cursory review before the trial started. [Chris] has not participated in any meaningful way in Landon's education endeavors nor has he assisted in any meaningful financial contribution towards those endeavors. Finally, the child support paid by [Chris] since Landon's birth can barely be considered "token".

The Court finds that while there have been changes in [Chris'] circumstances those changes are certainly not material. Additionally, any change in the custody or visitation arrangement would certainly be contrary to Landon's best interest. In fact, the Court finds to place Landon in [Chris'] custody would result in substantial harm to Landon.

The Court finds that [Chris'] counter-petition is most respectfully denied.

We find nothing in the record to preponderate against this finding. The only change that occurred since the entry of the November 2006 Order is that Chris was released from prison, a change that was reasonably anticipated at the date the custody order was entered. Thus, we affirm the trial court's denial of Chris' counter-petition for custody.

### E. Guardian Ad Litem Fees

Finally, Chris contends that the trial court erred when it ordered him to pay half of the guardian ad litem's fees, which he characterizes as "child support." The trial court entered an Order for Fees on February 10, 2011 as follows:

1. That the Guardian an Litem is hereby awarded attorney's fees which are reasonable and necessary for the maintenance and support of the minor children; therefore, a joint and several judgment is granted against [the Bs] and [Chris] in the amount of $6,392.57; . . .

3. [Chris] shall render payment to Stephanie Edwards in the amount of $3,196.28; . . .

Tenn. R. Civ. P. 17.03 allows courts to appoint a guardian ad litem "to defend an action for an infant or incompetent person who does not have a duly appointed representative, or whenever justice requires." Tenn. R. Civ. P. 17.03. It also provides a trial court discretion to "allow the guardian ad litem a reasonable fee for services, to be taxed as costs." *Id.* We review an award of guardian ad litem fees under an abuse of discretion

14

standard. *Keisling v. Keisling*, 196 S.W.3d 703, 726 (Tenn. Ct. App. 2005) (citations omitted).

We find no error in the trial court's requirement that Chris pay one-half of the guardian ad litem's fees. Moreover, we do not construe the court's assessment of fees as "child support" as Chris urges on appeal.

## III. Conclusion

For the foregoing reasons, we vacate the judgment terminating Chris' parental rights on the ground of abandonment by wanton disregard and remand the case for consideration of whether Chris' parental rights should be terminated on the ground of persistence of conditions or another ground alleged in the petition; the trial court may, in its discretion, consider further evidence as part of its inquiry.[15] The denial of Chris' counter-petition for custody and the assessment of guardian ad litem fees are affirmed.

_____
RICHARD H. DINKINS, JUDGE

---

[15] Proceedings on remand should be expedited in accordance with Tenn. Code Ann. § 36-1-124.